S. L. WATT, Appellant, v. J. E. ROBBINS and J. J. HAMMEN, Appellees.

Injunction: PLEADINGS: DAMAGES: EVIDENCE. A petition alleging
1   that the maintenance of a dam at a certain height had not and would not cause injury to plaintiff's land by flooding the same; that defendants were threatening to raise the dam and to maintain it at a greater height, thereby obstructing the flow of the water to plaintiff's injury, and asking an injunction and damages, but alleging no facts constituting past injury as a basis for damages, presented simply an equitable action for an injunction and did not authorize recovery of damages, or the introduction of evidence in support thereof.

Same: JOINDER OF CAUSES OF ACTION. A cause of action to enjoin
2   the raising of a dam, and one for past damages caused by the maintenance of the dam, cannot be joined in the same action, as one is in equity and the other at law and they cannot be prosecuted by the same kind of proceedings.

Same: JOINDER OF CAUSES: WAIVER OF OBJECTION. Where plaintiff's
3   petition as in this case did not state a cause of action for damages, but purported on its face to be simply an action for an injunction restraining a threatened wrong, defendant did not waive the right to recover damages by failing to move that plaintiff be required to separate his causes of action.

Same: PLEADINGS. A party cannot recover damages for a wrong
4   without pleading the wrong out of which the claimed damage arose, unless the opposite party consents, acquiesces or waives his right to have the issue stated as required by the laws of pleading and practice.

**Same:** ISSUES: EVIDENCE: APPEAL: REVIEW. Where the petition in an action to restrain the raising of a dam alleged that in its original height it would not injure plaintiff's land, defendants' failure to object to evidence of past damage caused thereby did not justify recovery, under the rule that where a cause is tried without objection, upon issues not fully presented by the pleading, the case will be determined upon appeal the same as if the issue had been actually presented; since the evidence of damage was competent to show apprehended injury and as a basis for securing the restraining order.

**Appeal:** TRIAL DE NOVO. Findings of the trial court upon law issues tried as such have the force and effect of a verdict of the jury; but if law issues are tried to the court as equitable issues and under the rules governing equitable proceedings, then the questions are triable *de novo* on appeal, and the evidence submitted in support of the findings of the trial court will be reviewed.

**Watercourses:** OBSTRUCTION: DAMAGES: EVIDENCE. In this action to restrain defendants from raising the height of a dam, and to recover past damages claimed to have resulted from the use of flashboards on the top of the dam, the evidence is reviewed and held insufficient to show that plaintiff had suffered damage to his land by the use of flashboards for which he had not already been compensated.

**Same:** PLEADINGS: EVIDENCE: CONFORMITY. Where plaintiff claimed damage to his land from overflow waters caused by the use of flashboards on top of the dam, and not as the result of the original structure, it was incumbent on him to trace his injury to the particular cause alleged.

**Same:** OBSTRUCTION OF WATERCOURSE: RIPARIAN RIGHTS: INJUNCTION. The owner of land through which a stream neither navigable nor meandered runs owns the bed of the stream, and is entitled to have the water flow therein from his land unobstructed; and he may enjoin the owner of a dam from raising the structure so as to interfere with the flow of the water to his injury.

*Appeal from Sac District Court.*—HON. F. M. POWERS, Judge.

WEDNESDAY, JULY 2, 1913.

ACTION to enjoin defendant from maintaining a dam across Coon river, and for damages claimed to have been

sustained by the plaintiff by the backing of water upon his land above the point where it is claimed the dam was erected and maintained. Judgment and decree for the defendant. Plaintiff appeals.—*Modified and Affirmed.*

*Charles D. Goldsmith,* for appellant.

*Elwood & Stanfield,* for appellees.

GAYNOR, J.—On the 22d day of May, 1911, the plaintiff filed the following petition:

Paragraph 1. That before and at the time of the committing of the injuries hereinafter complained of he was the owner and possessed of the certain farm and timber lands situated upon the Coon river, in Sac county, in this state, described as follows, to wit: Ten acres on the N. E. ¼ of S. E. ¼ of section 14, township 88, range 36 West, and above the premises of the defendants hereinafter mentioned and described, and had the right to have the water flow from his said farm and timber lands and in the natural channel of said river, without any obstruction whatever.

Par. 2. That on the 20th day of May, 1911, the defendants (having theretofore maintained a dam across the bed of said river that would, in no manner, without raising the height thereof, interfere with plaintiff's lands, and below plaintiff's said lands) threaten to and are now raising the height of the said dam, with the intention of keeping the same up, and have and are thereby obstructing the flow of water of said river, and thereby raise and threaten to raise it in the bed of the river, and thereby backing it upon the said farm and timber lands of plaintiff, to wit, to the height of two feet, thereby impeding and checking the natural flow of the water therefrom and causing the water so backed up and overflowing, to drown out and kill plaintiff's timber and crops, and thereby diminishing the value of plaintiff's said property to the damage of fifteen hundred dollars. That he has no speedy and adequate remedy at law. Wherefore, plaintiff demands judgment for damages in the sum of fifteen hundred dollars, and asks that a temporary writ of injunction do now issue

restraining the said defendants from raising the height and maintaining the height of said dam so as to interfere with, or overflow the said lands of plaintiff, and that, upon the final hearing of this cause, the said injunction be made perpetual, and for such other and further relief as may, in the mind of the court, be deemed equitable.

The defendants filed their answer, in which they deny each and every allegation of plaintiff's petition, except that plaintiff is the owner of the land therein described, and that there was a dam erected in Coon river below plaintiff's land, which for many years was maintained at said place to a height of fourteen feet; that the dam was constructed by the owners of the land on which it was constructed, and that by sale, grant, and deed a fourteen-foot dam was authorized to be constructed, and constructed by the owners of the land; that the dam so constructed was maintained as a right for more than ten years prior to 1907 without objection from the plaintiffs, or the then owners of the land described in his petition, and defendant says the plaintiff is therefore barred by the statute of limitations in objecting to the maintenance of the fourteen-foot dam; that in July, 1907, the dam was raised about five inches and the defendant Robbins for himself and the said milling company settled with the plaintiff for the right to so maintain it for one year from July 1, 1907, to July 1, 1908; that in July, 1908, the dam was reduced sixteen inches below fourteen feet high, and so remained until May, 1911; that in May, 1911, the defendants undertook to raise the dam ten and one-half inches and no more, and that at no time since July 1, 1908, has the dam been raised or maintained to a height exceeding fourteen feet; that through all conveyances from the owners, the defendant's grantors, the right to maintain the fourteen-foot dam was granted by deeds of conveyance. Defendant, further answering, says that at the time this action was commenced the dam complained of was but twelve feet eight inches high.

It will be noticed from the foregoing statement of the

issues that the plaintiff brings this action in equity, and it will
be noticed that the plaintiff alleges in his petition that the
dam maintained by the defendant across the
river, as maintained prior to the 20th day of
May, 1911, would in no manner without rais-
ing the height thereof interfere with plaintiff's land; that
at the time this action was commenced, to wit, the 22d day
of May, 1911, the defendants were threatening to and were
then in the act of raising the height of the dam, with the
intention of keeping the same up, and thereby obstructing
the flow of the water, and thereby diminishing the value of
plaintiff's land to the amount of $1,500, and that plaintiff has
no speedy and adequate remedy at law. It will be noticed
that in the prayer to plaintiff's petition he asks that a
temporary writ of injunction issue, restraining the defendant
from raising the height and maintaining the height of said dam
so as to interfere with or overflow plaintiff's land, and that
upon a final hearing the injunction be made perpetual. It
will be noticed also that he demands judgment in the sum
of $1,500.

1. INJUNCTION:
   pleadings:
   damages:
   evidence.

To our minds, this petition presents a purely equitable
action, and seeks an injunction to prevent threatened mis-
chief. There is no allegation of damages actually sustained.
The plaintiff positively states in the petition that the dam
so constructed and maintained prior to the 20th day of
May, 1911, if permitted to remain in that way, would in no
manner interfere with plaintiff's land, unless the same was
raised as contemplated by the defendant, and to arrest which
this action was apparently brought. It would seem to us
upon the reading of this petition that the thought of the
pleader was that, in order to maintain the action, it was
necessary to show that the conduct of the defendant against
which the injunction was sought, if permitted, would affect
the plaintiff injuriously; that this allegation as to damage was
made as a basis for the maintenance of the action on the part
of the plaintiff. It is true that in his petition he demands

$1,500 damages, but there is no basis laid in the petition for damages for any act on the part of the defendant in the past. There is no allegation that the plaintiff received any injury from any act done by the defendant in the past. The petition negatives the idea that he suffered any injury by any act of the defendant in the past.

Upon what theory, therefore, the plaintiff introduced evidence of damages sustained by him prior to the 20th day of May, 1911, and upon what theory he can claim that he is entitled to damage for any past act of the defendant, we are unable to conceive, in view of the positive averment of the petition that prior to the 20th day of May, 1911, the maintenance of the dam, as it then was, would not, and we assume therefore did not, in any manner interfere with plaintiff's land. Evidence ought to correspond with the allegations made, and be confined to the point in issue. Prayer for relief that rests upon no allegation of the petition does not entitle the party to the relief prayed for.

It must be borne in mind in the first place that our statute governing pleading provides that, where the petition contains more than one cause of action, each must be stated wholly in a count or division by itself, and must be sufficient in itself. Here we have but one count in which the plaintiff contends he has stated two causes of action; one in equity, asking protection against a threatened wrong, and the other an action at law in which he is seeking to recover damages for injury already done. Section 3545 of the Code provides: "Causes of action of whatever kind, where each may be prosecuted by the *same kind* of proceedings, if held by the same party, and against the same party, in the same right . . . may be joined in the same petition." It is true that section 4302 of the Code of 1897 provides that where a nuisance exists, and a civil action by *ordinary proceedings* is brought to enjoin and abate a nuisance, recovery for damages sustained may be had therein. This is where the action

2. SAME: joinder of causes of action.

is brought at law to enjoin and abate the nuisance. It is true that section 4354 of the Code provides that an injunction may be obtained, as an independent remedy, in an action by equitable proceedings in all cases where such relief would have been granted in equity previous to the adoption of the Code; and in all cases of breach of contract or other injury, where the party is entitled to maintain *and has brought an action by ordinary proceedings,* he may in the same cause pray and have a writ of injunction against the repetition, or continuance of such breach of contract, or other injury, or the commission of any breach of contract or injury of a like kind arising out of the same contract, or relating to the same property or right, and he may also, in the same action, include a claim for damages or other redress.

Here we have joined, in an equitable proceeding, if plaintiff's contention is true, two causes of action which cannot be prosecuted properly by the same kind of proceedings. The first must be prosecuted in equity and the other at law, and in the last the plaintiff is entitled to be heard before a jury.

It is true, as plaintiff contends, that the defendant made no objection to the uniting of the two causes of action in one count, and filed no motion requiring plaintiff to divide his causes of action into separate counts, and it is true, as 3. SAME: joinder plaintiff claims, that the defendant made no of causes: objection to the joining of a cause in equity, waiver of objection. with a cause at law in the same petition, and perhaps under this condition of the record, if the petition on its face had shown the cause of action at law, the defendant would be now bound to submit the case upon the issues tendered in the form and manner in which they were tendered, but, as we see and understand the petition, it did not charge an action at law. No allegation in the petition laid a basis for the recovery of damages for past injuries sustained. The defendant was therefore not bound to, nor could he

advisedly make a motion to divide the law action from the equity action, nor to strike or require plaintiff to elect, for the petition on its face did not advise him that plaintiff would contend that he was entitled to more than the facts alleged in his petition indicated; to wit, a restraining order from a threatened wrong.

A party cannot by introducing evidence of wrongs done or injuries sustained, for which an action might lie, recover for such wrongs, without alleging the doing of the wrong

4. SAME: pleadings.

out of which the claimed damage arose, unless the other party consents thereto, or acquiesces therein, or waives his right to have the issue stated as required by the laws of pleading and practice.

Here the plaintiff, without alleging that he suffered any damage on account of past wrongs, in fact, positively alleging that he suffered no damage on account of the wrong of which

5. SAME: issues: evidence: appeal: review.

he now complains, seeks, by introducing evidence, to lay the foundation for a judgment for the wrongs. This, we think, cannot be done, and we assume that the lower court dismissed plaintiff's claim for damages upon the theory that the plaintiff, in his pleading, had laid no basis for the recovery of such damages. In fact, had negatived his right to recover such damages. It is true that in many cases brought to this court, which were tried upon issues not fully presented in the pleading, this court has proceeded upon the theory that the cause having been tried in the court below without objection, and upon a certain theory, and as if the pleadings presented certain issues, it ought to be disposed of here upon the same theory, and treat it as if the issue had been actually presented. See *Fenner v. Crips Bros.*, 109 Iowa, 455; *Blades v. Des Moines Ry. Co.*, 146 Iowa, 580; *Cox v. Cline*, 147 Iowa, 353. This has been upon the theory that, if objections were urged to the testimony, amendments might be made to conform the pleadings to the facts proposed to be proven, and it was said that the introduction of evidence on an issue not

specially pleaded without objection obviates the necessity of formal presentation, but this rule of waiver or acquiescence in an issue as if it were made in the pleading does not rise where the evidence offered was clearly admissible upon issues actually tendered; then no acquiescence can be inferred from a failure to object. In this case the evidence as to damages and injury to the plaintiff's land was competent as tending to show the apprehended danger from the threatened act, and as a basis for securing the restraining order. The amount of the damage, of course, was not so material, but competent, even under the issues tendered, but no case has gone so far as to say that a party can recover damages upon a state of facts negatived by the pleading upon which he predicates his right to recover, and in this case the plaintiff has expressly stated that no damage would result to his land by the continuation of the dam, unless it was raised, impliedly and inferentially, if not directly, saying that the dam did not, and would not, affect his property injuriously, unless raised as then threatened.

But, if we should assume that there was an issue tendered in the court below, though not expressed by any pleading filed in the cause, and that this issue involved the right of the plaintiff to recover damages for past wrongs suffered from the construction and maintenance of the dam, and that this issue was acquiesced in by the defendants and the court, still a careful reading of the record satisfies us that the plaintiff has not sustained the issue by such evidence as would justify the court in assessing damages in his favor. If the issue presented in the court below is a law issue and treated as such, then, upon appeal here, it is triable upon error only, and the finding of the trial court has the force and effect of a verdict. But if a law issue, and tried in the court below as an equitable issue, and under the rules that govern the trial of equity proceedings, then, on an appeal here, it would be triable *de novo,* or the same as all equitable cases are triable in this court, and it

6. APPEAL: trial *de novo.*

would necessitate a review of the evidence submitted in support of plaintiff's contention. This we have done. Plaintiff in his argument filed in this court says that the only damage complained of by him is that done after the year 1908. He says that no damage was done until 1907, and that all the damage that plaintiff complained of was done after 1908; that defendant settled for all damages done up to the 1st of July, 1908, and that he had no right of action for damages until damages were threatened after that date. He says in his argument in stating the issues which he claims were tried in the court below that the only possession defendants ever had was such as an overflow would create, and this overflow was not damaging until the year 1907. There was even no overflow until the defendant placed flashboards in the dam.

We come now to the evidence. It appears that the plaintiff bought the land in controversy in the fall of 1906; that he took possession March 1, 1907; that the dam complained

7. WATERCOURSES: of was built in the fore part of 1860, and re-
obstruction: mained in practically the same condition un-
damages: evi-
dence. til somewhere in the year 1890 and 1891;
that it was then reconstructed, and the evidence shows practically rebuilt as before. It appears: That in the year 1907 the plaintiff went to the defendant Robbins, and complained of the action of the defendant at that time in attempting to raise the dam by the use of flashboards; that the defendant said to him: " 'I intend to trade this off. Will you wait awhile until I get rid of it,' I asked him how long he wanted me to wait. He said, 'Make it the 1st day of July, 1908.' '' That thereupon the plaintiff agreed to permit the defendant to raise the dam until the 1st day of July, 1908, and the defendant paid him as consideration therefor the sum of $37.50. That this land was flooded during the year 1907 and prior to the 1st day of July, 1908. That during the winter of 1907 and 1908 the water flowed over these premises, and the plaintiff says: "I do not know whether it affected the trees or not. I could not tell if it did." That the trees did not die

until the spring of 1910. Plaintiff further testified that he and others met with the defendant in July, 1908, to consult with the defendant touching the backwater; that after the consultation a petition was circulated by those interested in the cemetery which adjoined the river at this point; that thereafter the boards complained of went down or were removed; that there were two boards at that time which raised it about twenty inches; that after this petition was circulated they took these boards off, and they stayed off until late in the fall of 1908, when one board was put on and it stayed on nearly all winter.

Mr. Early, testifying, says that the high water of 1908 which flooded this land, when he observed it, was on the 26th day of June, 1908. This it will be seen was prior to the expiration of the time fixed in the agreement between plaintiff and defendant, and when, under the agreement, defendant had a right to maintain these flashboards.

Defendant Robbins testifies that the high water of 1908 came on the 17th day of June 1908; that in July, 1908, notice was served upon him not to place any flashboards upon the dam, and that because of that he kept the flashboards off, and that he never put any planks on after that date. He says: "We quit the milling business in the last part of July, 1908, for no other reason than we did not dare to put the planks on the dam, and we could not run it without them, that from the 1st day of July, 1907, until the 1st day of July, 1908, we carried the highest head of water we ever carried. I do not know how high it was. I paid the plaintiff $37 for the privilege that year, which ended July 1, 1908. We have never made any changes since the 17th day of June, 1908, to obstruct the flow of the water in any shape or manner whatever."

Bodwell, testifying for the plaintiff, says he saw boards placed on the top of the dam since 1908. He does not say how high the boards were, nor whether they had the effect of backing the water upon plaintiff's land.

Lewis, testifying for the plaintiff, says: "My recollection

is that I saw the boards put on in May, 1911, and the next day Mr. Robbins took them off, or part of them.''

Gordon, testifying for the plaintiff, says that he saw the water backed up in the year 1908, but does not say whether it was prior to, or after the 1st day of July, 1908. He further says: ''I have since 1908 seen the water backed up every spring until last spring. That is when they had the planks on.'' He does not say that the backwater reached plaintiff's land.

Austin, testifying for the plaintiff, says that he has seen boards on the dam since 1908, and he further says that, as the dam stands now with the boards, it will back the water and hold it up about where the pipe line crosses the river on the lower part of plaintiff's land; that, when the planks are on, it would hold it farther back, and that would have the effect of killing the grass and timber. ''There has been a lot of timber killed out there, but I cannot say what did it.'' Nowhere in this testimony does the witness indicate at what season of the year he observed this backwater, nor whether the boards complained of were on at the time the water was backed up. He gives the opinion that, if the boards were on, the water would back up, and produce the results testified to.

Miller, testifying for the plaintiff, says that in 1909 and 1910 there were boards put on the top of the dam across the spillway, but he cannot give the dates. He says that these boards backed the water beyond the plaintiff's land; that it would not be backed up except for the planks; that, when the planks were taken off, the water would go down. He says that the timber on plaintiff's land was killed by water, and that the water killed the grass.

Blakesslee, testifying for the plaintiff, says that he helped put the boards on top of this dam in 1910. He put these boards on to raise the water to get more power. He says: ''We had scarcely any water then to run the mill, and we put them

on for the purpose of getting sufficient head to operate the mill."

Much of this testimony is controverted by the testimony offered on the part of the defendant. Mr. Lee, one of appellant's witnesses, says that the land was overflowed in June and July, 1909, and 1910. This is only helpful to plaintiff's case in the event the planks were on at that time. At the time he saw the planks on the dam in 1909, according to his testimony, it must have been after the middle of November, 1909, the time D. Nice had charge of the property.

It is claimed that the trees died in the winter of 1909 and 1910, and as plaintiff said in his testimony the trees were killed in the winter of 1909 and 1910, and the grass about the same time. In the winter of 1907 and 1908 the water overflowed the same premises. "I don't know that it affected the trees at that time. I could not tell if it did."

The witnesses who were called upon to estimate the damage based their estimate upon what the land was reasonably worth before the trees were killed and the grass destroyed, and what it was reasonably worth immediately afterwards. It appears the plaintiff cannot tell whether the floods of 1907 and 1908, when the boards were on with his consent, produced the injury to the land, or the floods of 1909 and 1910. The defendant says they did not die until the spring of 1910. Whether the cause that produced the death of these trees is traceable to the floods of 1907 and 1908, or 1909 and 1910, is not shown. The damage, if any, must be traceable to the alleged cause of the damage; to the act which it is charged caused the damage. Any act to which the plaintiff consented cannot be the basis for the recovery of damages.

Defendant's testimony tended to show that the planks were only put on when the water was at low-water mark, and were always taken off when the water was high; that they were only placed there temporarily. It appears that the highest boards used on the dam were used with the consent of plaintiff from July, 1907, to July, 1908. It is true that the

testimony generally shows that the river did at times over-flow plaintiff's land. It is true that the testimony tended to show that boards have been seen on the top of this dam at various times, but no witness pretended to say that the flush-boards, or flashboards, were on the dam at the time plaintiff's premises were overflowed. The physical facts disclosed by the evidence do not convince the mind that the overflow of plaintiff's land was due to any act of the defendant in placing flushboards upon the top of the dam after July, 1908.

Plaintiff bases his right to recover, therefore, as we can gather it from the uncertain record, upon the defendant's use of flushboards upon the dam. He does not claim any damages from any overflow of his land which might result from the original structure. Therefore, it is incumbent upon him to trace the injury to the thing alleged as the cause of the injury. This, we think, he has not done. He has left the court simply to guesswork or conjecture. It is true that certain witnesses have expressed opinions as to the cause of the damage. This has very little probative force.

8. SAME: pleadings: evidence: conformity.

We find no certain basis in the evidence upon which we would be justified in fixing any amount of damages to which we could reasonably say the act complained of was the proximate cause.

We now come to consider the issue tendered by the plaintiff in which he seeks to restrain the defendant from a threatened wrong.

As we have heretofore stated, the plaintiff in his petition alleges that on the 20th day of May, 1911, the defendant threatens to raise the height of the dam by means of flash-boards, and that, if he is permitted to do so, he will greatly damage and injure plaintiff's land. No complaint is made whatever of the dam as it existed there for many years prior to this 20th day of May, 1911, and no relief is asked against the maintenance of the dam as it then existed. The plaintiff

9. SAME: obstruction of watercourse: riparian rights: injunction.

has invoked the powers of the law to restrain the defendant from in any way raising the height of the dam to the injury of the plaintiff.

It appears that the stream in which the dam is located, to wit, the Coon river, runs through the plaintiff's land. It appears that it is not navigable, nor a meandered stream. Therefore, under the well-settled rules of law, the plaintiff owns the bed of the stream. On all navigable streams the riparian owner owns to high-water mark, and this is also true of all non-navigable, but meandered streams. Therefore, the plaintiff had the right, under the law, to have the water flow from his land in the natural channel of the stream without obstruction, and, this being true, he had the right to restrain any interference with the flow of the water from his land.

It does not appear from the evidence that the defendant has by prescription or otherwise acquired any right to raise the stream above the point maintained by the dam, as originally constructed as against this plaintiff. His right to maintain the dam as originally constructed is not called in question. It appears fairly well established by the evidence that to permit the defendant to raise the dam, as threatened, will have the effect of interfering with the flow of the water from plaintiff's land to the plaintiff's injury, and we think to this extent the decree entered by the court should be modified so as to grant an injunction against the defendants prohibiting them from rasing the dam above the point at which it was maintained, to wit, to the fourteen-foot head.

The prayer of the plaintiff's petition, in so far as it seeks a restraining order, or an injunction to restrain the defendant from placing flash or flush boards upon the dam, is sustained, and decree ordered accordingly, and to this extent the decree entered by the court below is modified and affirmed.

*Modified* and *Affirmed.*