J. E. ROBBINS et al., Plaintiffs, v. POWERS, Judge, Defendant.

**WATERS AND WATERCOURSES:** Enjoining Certain Maintenance
    **—Decree—Construction.** The court, in an action to enjoin the
    *raising* of a dam, decreed that defendant be enjoined ''from

maintaining any dam . . . other than the dam originally constructed . . . with flush boards . . . whereby . . . the water . . . shall be increased in height . . . in any manner . . . different than would be caused by said dam as originally constructed.'' In an action charging the owner of the dam with contempt for violating the injunction, in that he was maintaining the dam with ''flush'' boards, *held,* in the light of the language of the decree, aided by the pleadings, testimony, and opinion in the original suit, the owner was enjoined from increasing the height of the dam above its original height by use of ''flush'' boards or any other means, but was not enjoined from keeping the dam at its original height by ''flush'' boards or by any other means.

*Certiorari from Sac District Court.*—HON. F. M. POWERS, Judge.

SATURDAY, DECEMBER 19, 1914.

REHEARING DENIED TUESDAY, MAY 11, 1915.

THIS is a certiorari proceeding in the nature of an appeal. It is brought in this court under the provisions of Code Sec. 4468, to obtain a review of the judgment of the district court of Sac County whereby the petitioners herein were found guilty of contempt for an alleged violation of a decree of injunction theretofore issued by this court.—*Annulled.*

*Faville & Whitney* and *M. Currie,* for plaintiffs.

*C. D. Goldsmith,* for defendant.

EVANS, J.—The consideration of this case involves the construction of a final decree of this court entered in a former case entitled *Watt v. Robbins.* The opinion of this court in such former case will be found in 160 Iowa 587. In pursuance of such opinion, a formal decree was entered. Upon complaint of Watt, plaintiff in the former case, the defendants therein and their successors in title were cited for contempt, and upon hearing, were adjudged guilty thereof. The present controversy involves the proper construction of

1. WATERS AND WATER-COURSES : enjoining certain maintenance : decree : construction.

the decree entered in such case. The facts of the present case and those of the former case are so interwoven that it will avoid confusion, we think, to ignore the title of the present case for the purpose of the discussion and to carry the former title in our references to the plaintiff and defendant. That is to say, Watt will be referred to in our discussion as the plaintiff, and the petitioners herein as the defendants.

Plaintiff Watt brought the former action on May 22, 1911. He averred that he was owner of land abutting upon a stream and that the defendants were owners of a mill dam maintained across such stream. His petition contained the following averment:

"That on the 20th day of May, 1911, the defendants having theretofore maintained a dam across the bed of said river that would in no manner, without raising the height thereof, interfere with plaintiff's lands, and below plaintiff's said lands, threaten to, and are now raising the height of the said dam, with the intention of keeping the same up and have and are thereby obstructing the flow of the water of said river, and thereby raise and threaten to raise it in the bed of the river, and thereby backing it upon the said farm and timber lands of plaintiff, to wit: To the height of two feet, thereby impeding and checking the natural flow of the water therefrom and causing the water so backed up and overflowing, to drown out and kill plaintiff's timber and crops, and thereby diminishing the value of plaintiff's said property to the damage of fifteen hundred dollars. . . . Wherefore, plaintiff demands judgment for damages in the sum of fifteen hundred dollars, and asks that a temporary writ of injunction do now issue restraining the said defendants from raising the height and maintaining the height of said dam so as to interfere with or overflow the said lands of plaintiff, and that upon the final hearing of this cause the said injunction be made perpetual, and for such other and further relief as may in the mind of the court be deemed equitable."

Upon trial had, the district court entered judgment dismissing the petition. The plaintiff prosecuted an appeal to this court. The judgment below was affirmed here with one modification. This modification related to the alleged threat of the defendants to raise their dam to a greater height than its original construction. The decree enjoined the execution of such threat and enjoined the defendants from raising the dam to a greater height than the original construction. The opinion pursuant to which the decree was entered found the original height to be a "14-foot" head. The following sketch represents a cross section of the dam looking up stream.

The dam extends from A to B. To the left of A is the stone abutment. At the right of the dam between B and C is the fishway extending to the top of the dam. The dam is built of solid concrete, except the space between B, X, Y, and Z. This space is built up with boards to the line BX. The purpose of this construction is to protect the dam as a whole against the danger of being carried out by high

water. In such case, the board construction gives way first and thereby relieves the pressure on the main structure. The depth between X and Y and B and Z is 16 inches. The line AB represents the "14-foot head." It was the claim of Watt, as a witness, both upon the former trial and at the trial for contempt, that when he commenced his injunction suit against the defendants, they were putting boards upon such dam to the height of 26 inches. This would carry the height 10 inches above the line AB. At the time the defendants were cited for contempt, they were maintaining boards in such space BXYZ to a height of a little less than 16 inches. The boards thus used have been referred to throughout the record as flush-boards. The citation for contempt was based upon the claim that the defendants had no right under the decree of this court to use any boards whatever in such space. This would reduce the height of defendant's dam to a line 16 inches lower than a 14-foot head. The contention is that the decree of this court peremptorily forbade the use of flush-boards for any use whatever. The language of the decree relied on by appellee is quoted in his brief as follows:

"Wherefore, it is ordered, adjudged, and decreed that the defendants, and each of them, their servants, agents, and employees, be perpetually enjoined and restrained . . . from maintaining any dam or artificial obstruction other than the original dam . . . without flush-boards."

The foregoing quotation is literal as far as it goes. But it is wholly misleading because it stops in the midst of a sentence. The entire sentence in the decree from which the foregoing is taken is as follows:

"Wherefore it is ordered, adjudged and decreed that the defendants and each of them, their servants, agents, and employees, be perpetually enjoined and restrained from maintaining, . . . any dam or artificial obstruction, other than the dam originally constructed for mill purposes without

flush-boards or other means of obstruction whereby the flow of the water in said river shall be increased or raised in height, or to cause the water of said river to be backed upon, or overflow the land of plaintiff in any manner other, or different than would be caused by said dam as originally constructed.''

The difference between the two quotations indicates the difference between the parties in their contention as to the effect of the decree. The defendants in the former action contend that they were enjoined only from increasing the height of the dam above its original height. We quote from the opinion the following: ''We now come to consider the issue tendered by the plaintiff in which he seeks to restrain the defendants from a threatened wrong. . . . No complaint is made whatever of the dam as it existed there for many years prior to this 20th of May, 1911, and no relief is asked against the maintenance of the dam as it then existed. The plaintiff has invoked the powers of the law to restrain the defendant from in any way raising the height of the dam to the injury of the plaintiff. . . .''

''His right to maintain the dam as originally constructed is not called in question. It appears fairly well established by the evidence that to permit the defendant to raise the dam, as threatened, will have the effect of interfering with the flow of the water from plaintiff's land to the plaintiff's injury, and we think to this extent the decree entered by the court should be modified so as to grant an injunction against the defendants prohibiting them from raising the dam above the point at which it was maintained, to wit, to the 14-foot head.''

The petition in the former case made no mention of flush-boards. No complaint was made either in pleading or evidence of the use of flush-boards as distinguished from any other means of raising the height of the dam. It was undisputed on the former trial that the owners of the dam were entitled to a 14-foot head. The same is undisputed in this

record. Watt himself testified to that effect on the hearing of the contempt proceeding. The testimony on the part of the defendants below shows conclusively that the boards used do not carry the height of the dam above the 14-foot head. There is not a word of evidence in contradiction of this testimony. Watt testified to his opinion that the dam with the use of such boards was higher than when originally constructed. He also testified that no flush-boards were used in the original construction. Only in that sense is there any contradiction in the testimony. To our minds, the material inquiry here is whether the defendants below, by the use of flush-boards or by any other means, have carried the dam to a greater height than a 14-foot head. There was no occasion for opinion or guessing on the question. It was capable of exact ascertainment. The constructor of the dam testified to it unequivocally. As long as the defendants below keep the height of their dam within the 14-foot head, Watt has no possible interest in the material out of which the dam might be constructed. If they were to reconstruct the dam and to use boards exclusively in its reconstruction, in what way could the lands of Watt be injuriously affected by such construction?

Watt's evidence that no flush-boards were used in the original construction, and that in his opinion the original construction was lower than the present height, was quite beside the mark. He himself testified that the flush-boards had been used for years prior to his former suit. His petition in such former suit, as above quoted, concedes that the dam was maintained at a proper height prior to May 20, 1911, which was two days before the beginning of his suit.

Construing the decree in its entirety and in the light of the pleadings and the opinion of this court pursuant to which it was entered, we hold that it forbade the defendants therein from increasing the height of their dam above its original height by flush-boards or by any other means whatsoever. As long as the defendants refrain from increasing

such height, they are under no restraint as to the material they may use in maintaining the dam up to the permissible height. We find further that such decree entitles them to maintain the dam to a 14-foot head, that being the original height as appeared upon the former trial and as appears now. The proof being conclusive that the height of the dam has not been carried beyond such 14-foot head, there was no violation of the injunction. The defendants, therefore, ought to have been discharged in the contempt proceeding.

Other questions argued need not be considered. The order entered below adjudging the petitioners herein guilty of contempt for the violation of the injunction must be annulled, and it is so ordered.—*Annulled.*

LADD, C. J., WEAVER and PRESTON, JJ., concur.