C. R. MILLS, Appellant, v. WAPSIPINICON POWER COMPANY et al., Appellees.

**WATERS AND WATERCOURSES: Decree in re Construction of Dam.**
Ambiguous decree construed, and held to authorize the construction and maintenance of a dam to a height *contemplated* by the parties at the time the decree was entered, especially when the one complaining did not show that he would be damaged by the proposed construction.

*Appeal from Linn District Court.*—F. F. DAWLEY, Judge.

JUNE 25, 1921.

REHEARING DENIED OCTOBER 1, 1921.

ACTION in equity to enjoin the defendants from raising the height of a dam across the Wapsipinicon River. The petition was dismissed, and defendants appeal.—*Affirmed.*

*Voris & Haas,* for appellant.

*Redmond & Stewart,* for appellees.

FAVILLE, J.—The appellant is the owner of a farm of about 300 acres, located about 2¾ miles from Central City. The farm is bounded on the east for about 1¾ miles by the Wapsipinicon River. At an early day, a dam was constructed across the river

at Central City.  As originally constructed, the dam was of an old type, composed largely of wooden material, and was subject to destruction by floods and by decay.  About the years 1911 and 1912, the old dam was replaced by the construction of a concrete dam, near the point where the old dam had been located. The new dam was erected some 3 feet or more higher than the old dam was at the time the new dam was built.  At the time of the construction of the new dam, an electric power house was built at the west end.  The new concrete dam, as cónstructed, appears to have been about 12 feet in height.  After the dam was built, a controversy arose between the appellees and the owners of land up stream, regarding the same, and this finally resulted in the institution of proceedings by appellees, under Chapter 1, Title X, of the Code, for the purpose of obtaining the rights of flowage.  Settlement of the disputed question was finally effectuated in said action between the appellees and the various landowners, including the appellant herein.  At said time, a decree was entered, granting to the appellees herein a license ''to construct said dam and improvement as proposed, and to raise the same as therein proposed, with the necessary raceways, flowage, and spillways and other construction, to use, maintain, and operate said dam so raised and improved at its present height, constructed in cement.''

Said decree was entered in April, 1917.  It is the contention of the appellant that, in the early part of the following September, the appellees commenced the erection of a cement addition on the west end of said dam and on the top thereof.  The claim is that the said addition, about to be erected, was to be 42 feet long and 4 feet high.  Appellant's contention is that the construction of the so-called addition to the said dam was in direct violation of the terms and provisions of the license granted to the appellees by the said order and decree of the district court, and that the lands of the appellant would suffer damage by reason of the additional overflow from the waters of said river, caused by the proposed change in the construction of said dam and the addition to the height thereof.

It is the contention of the appellees that the decree granting the appellees a license to construct said dam contemplated the construction in question and was authorized thereby, and

it is their further contention that, in any event, the proposed construction on the dam would cause no injury whatever to the lands of the appellant.

· It appears from the undisputed testimony that, shortly after the concrete dam was built, in 1912, the appellees erected on the dam a concrete pier, located 42 feet west of the power house. Gas pipes were cast in the concrete of the dam when the same was constructed, and planks were bolted to these, thus filling in the space between the pier that had been erected 42 feet from the power house, and the wall of the power house. The planks were maintained at different heights at different times, varying from 2 to 4 feet. The ice and high water removed these planks, from time to time. The evidence showed that the pier and the planks had been so maintained for about 5 years prior to the time of the decree in April, 1917. These planks are sometimes referred to as "flashboards." The concrete pier that was erected originally on the dam, 42 feet from the power house, with which the planks were connected, proved to be too weak in construction, and was taken out by the ice and replaced once or twice.

The appellant sought by this action to enjoin the appellees from substituting for this plank construction a concrete wall, 4 feet in height. The appellant contends for a strict interpretation of the language of the decree licensing the construction of the dam. Emphasis is laid upon the fact that the license provided that the appellees may "maintain and operate said dam, so raised and improved, at its present height, *constructed in cement.*"

It is contended in behalf of the appellant that the language of the license limits the right of the appellees to maintain the dam at the height at which it had been constructed in cement, at the time the license was issued. It is apparent that the language of the decree is not free from ambiguity. The decree provides that the appellees have a right "to construct said dam and improvement *as proposed,*" and also "*to raise the same, as therein proposed, with the necessary raceways, flowage, and spillways and other construction.*"

The evidence shows that it was "proposed" to construct said dam and improvements with this structure 4 feet high, extending 42 feet from the west wall. It had been so maintained

with planks for a number of years, and it was part of the plans, and it was "proposed" to continue to so maintain it. The pier 42 feet from the end of the dam, to which the flashboards or planks were attached, had already been built of cement.

The evidence satisfies us that it became necessary to replace with concrete this structure that had been built of planks, because of the destruction of the plank structure, and also because the state fish and game commissioner required the construction of a fishway in the dam.

The evidence shows that the structure had been maintained for a number of years between the concrete pier and the end of the dam. The appellant concedes some knowledge of the existence of such structure.

We think there is but one conclusion to be drawn from all of the evidence in the case, and that is that the decree was intended to and did give to the appellees the right to construct the dam and improvement "as proposed," and to raise the same "as proposed," with "the necessary raceways, flowage, and spillways and *other construction.*" This, in view of the circumstances existing at the time, gave the appellees the right to maintain the concrete dam, and also the concrete pier erected thereon, 42 feet from the end, and to maintain between the said pier and the end of the dam a structure 4 feet in height. We do not think that the words in the decree, "to use, maintain, and operate said dam, so raised and improved, at its present height, constructed in cement," are a limitation upon the right of the appellees to carry out the plan of construction that was "proposed" and under consideration and passed upon by the court in granting the license. It can make no difference whatever to the appellant whether the structure on the dam, extending from the wall to the pier 42 feet distant, and 4 feet high, is composed of plank or of cement. The sole question is whether or not, under the situation as it existed at the time the license was granted, the decree of the court granting the license authorized and empowered the appellees to erect such a structure on the original dam. The weight of the evidence is to the effect that such a structure had been maintained at said place for approximately five years, except during such time as the planks were washed away or voluntarily removed by the appellees. The proposed

plan for which a license was sought involved the erection of such a structure on the dam, as a part thereof. As we construe the license granted, it permitted the building of such a structure. The situation is quite similar to that presented in the cases of *Watt v. Robbins*, 160 Iowa 587, and *Robbins v. Powers*, 170 Iowa 223.

Again, we think the appellant failed to prove that he would suffer any additional damage that had not been considered and compensated for at the time the license in question was granted. As previously stated, the structure of planks had been maintained some five years prior to the granting of this license and the settlement of appellant's damages. Furthermore, the evidence tends to show that, in a number of places between the dam and the land of the appellant, the width of the river was narrower than the spillway of the dam would be after the concrete structure was placed thereon; and, taking into consideration the gate provided in the dam, it is apparent that the flow of water over the dam would not be so interfered with as to cause any substantial increase in the overflow upon appellant's land.

Under all the facts and circumstances disclosed by the evidence, we are of the opinion that the license granted the appellees was broad enough in its terms to permit the erection of the structure proposed by substituting concrete for the previously existing structure of planks, and that the appellant was not entitled to a writ of injunction restraining the appellees from building such structure.

It therefore follows that the judgment of the district court in dismissing the appellant's petition was correct, and it is— *Affirmed*.

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.