Corbett v. Waterman.

payment to the maker on the 20th day of September 1858, and notice of non-payment duly given to the administrators of the indorser on the same day. Upon this proof, the court held that the instrument was negotiable; that three days of grace should have been allowed thereon, that the presentment, demand and notice being before the last day of grace, did not bind the indorser and that he was released, to all which plaintiff excepted and appeals.

*Leonard & Mott*, for the appellant.

*H. J. B. Cummings* for the appellees.

## CORBETT v. WATERMAN.

1. MORTGAGE. Where the purchaser of mortgaged premises assumes in

the deed, or covenants to pay the mortgage debt, he is liable for the amount of it to the grantor, and as between them the mortgagor becomes a surety and the vendee makes the debt his own. The relation of the vendor and mortgagor to the mortgagee remains unchanged, and both the vendor and purchaser may, as to him, be treated as principals; and this relation will not be changed by an agreement between the vendee and mortgagee for an extension of time.

*Appeal from Dubuque District Court.*

SATURDAY, OCTOBER 6.

ON the 1st of November, 1856, Waterman and wife made their mortgage to secure to complainant two notes of even date for $1037,50 each, due in six and twelve months. The note first due was paid. On the 14th of April 1857, Waterman sold to Hopkins the mortgaged premises. The deed to Hopkins refers to the mortgage and recites *that Hopkins is to pay said notes.* The consideration mentioned in this deed is $3070, and on the same day Hopkins executed to Waterman a mortgage on the same premises to secure the sum of $891,25, due one year from said date. On the 2d of November 1857, complainant, in writing, in consideration of the sum of one dollar paid by Hopkins agreed with him to extend the time on the mortgage given by Waterman, "three months on one half of said mortgage, and six months on the other half, last payment to bear fifteen per cent interest; first, the rate contracted for in mortgage." When the last note secured by the Waterman mortgage matured, the mortgaged premises were of sufficient value to pay the same. At that time Hopkins was solvent. Within six months thereafter Hopkins became insolvent, and within the same time the mortgaged premises so depreciated in value as to be insufficient to pay said note.

Upon these facts the court below decreed the foreclosure of the mortgage, with an order for a general execution against Hopkins, adjudged costs against Waterman and wife to the time of filing their amended answer, and in all other

respects as to them dismissed the bill. Complainant appeals.

*Griffith & Knight* for the appellant.

*Samuels, Allison & Crane* for the appellee.

WRIGHT, J.—Where the purchaser of mortgaged premises assumes in the deed, or covenants to pay the mortgage, (and especially if the amount is deducted from the price,) such purchaser is liable to pay the amount of it to the grantor as part of the price, *and as between them* the mortgagor becomes a surety in respect to the mortgage, and as between them the vendee makes the debt his own. (1 Hill. Mortg. 238 section 59.)

The correctness of this rule is conceded by both parties in this controversy, but it is claimed by appellant, that while as between the *vendor* and *purchaser*, such vendor is a surety, the relation of the vendor to the mortgagee remains unchanged. As a rule this proposition is correct and the only question therefore is what effect the agreement of complainant with the purchaser (Hopkins,) shall have upon the rights of the vendor and mortgagor (Waterman.)

While in equity as between the parties to the deed, the vendor is regarded as the surety, and the vendee as the principal debtor, the mortagee may treat them both as principal debtors as to him and have a personal decree against either or both. And until he has done some act, or it in some-manner sufficiently appears that he recognizes the purchaser or vendee as the principal and the original mortgagor as surety merely, both of them will as to such mortgagee be treated as principals. It would not be claimed, of course, and is not in this place, that if both are principals, the extention of time to the the vendee in the absence of fraud or collusion, would have the effect of releasing the mortgagor from his personal liability. But it is claimed, that the extension of time to Hopkins for *valuable* consideration was in

equity treating him as the *principal debtor*, and Waterman as the surety. It may be that this agreement had the effect of recognizing Hopkins as a principal debtor. The agreement however did not make him so, for he was this before. Then the material inquiry is, did it have the effect of making *Hopkins the debtor and Waterman the surety* as to Corbett. He was not, as to Corbett, such surety before, and was not afterwards, unless this agreement had that effect in equity. And we can see no good reason for giving it this effect.

The language of the agreement is quite as consistent with the idea that the mortagee still regarded the mortgagor liable as a principal, as that he designed placing him in the position of or recognizing him as a surety, and there is nothing in it from which the mortgagor could be led to infer that he was to be so treated, or that he was likely to be misled thereby.

The remedy against either or both of the mortgagors (Waterman or Hopkins) was not exclusively in the hands of Corbett. Corbett, it is true, could settle the debt with either, and a payment or other satisfactory arrangement of it by Hopkins would have enured to the benefit of Waterman. There was no such agreement however between the parties, as made Hopkins the debtor of Corbett, to the extent that Waterman could not interfere and control for the protection of his own rights. Thus we see no reason why Waterman could not have sued Hopkins at any time after the maturity of the note to Corbett and compelled him to pay by virtue of his promise and undertaking as recited in the deed.

Without enlarging, we conclude that Waterman continued notwithstanding this agreement, liable as principal and that complainant was entitled to an order for a general execution against him after exhausting the mortgaged premises.

Decree reversed.