## SNYDER v. SUMMERS.

CONVEYANCE. *Lien. Vendor. Vendee.* The complainant, being the owner of land by deed in fee, on the face of which a lien was retained for the purchase money, sold to defendant an undivided one-fourth interest therein by deed with covenant of general warranty, taking from him a penal obligation to assume and pay one-fourth of the lien debt in part consideration of the sale, and the land was afterward sold, together with other property of the complainant, in satisfaction of the lien debt, the amount of that debt having been reduced, by compromise between the original vendor and the complainant, to a sum less than the amount due from the defendant, no part of which

he had paid. *Held,* that defendant was not entitled to any recovery on the warranty to him, but was entitled to share in the reduction of the lien debt, and was liable to the complainant for the debt as reduced in the proportion in which he would have been bound for the balance of the debt had there been no compromise.

## FROM BEDFORD.

Appeal from the Chancery Court at Shelbyville. A. S. MARKS, Ch.

ED COOPER for complainant.

WISENER & SON for complainant.

COOPER, J., delivered the opinion of the court.

On the 7th of September, 1861, the complainant, James S. Snyder, bought from the Union Bank, at the price of $25,000, certain lots in the city of Chattanooga, on which were situated a mill and distillery, and known as the Bell property. He paid ($5,000) five thousand dollars down, and executed notes, at four and five years, with interest from date, for the residue of the purchase money. The bank conveyed to him the land by deed in fee, retaining a lien for the unpaid purchase money. Snyder sold an undivided one-fourth interest in this property to William Snyder, an undivided eighth to Haldeman, and another eighth to Bruce. On the 14th of February, 1863, he sold and conveyed to the defendant, W. W. Summers, by deed in fee with covenants of warranty, one undivided fourth of said property for $7,500 in Confederate money then paid, and the assumption by Summers of the payment of one-fourth of the unpaid

debt to the Union Bank.    At the time, and as part
of the transaction, he took the obligation of Summers
in the penalty of $10,000, conditioned for the pay-
ment of "said one-fourth of his said liability to said
bank, say five thousand dollars, with all the interest
and damages."    The recitals of this instrument, upon
which the defendant's undertaking is made to rest,
and embodied in the condition, are as follows: "The
said Snyder is indebted in these premises by his sev-
eral notes to the Union Bank of Tennessee, in the
sum of twenty thousand dollars, one-fourth of which,
say five thousand dollars, I (W. W. Summers) assume
to pay, with all the interest and damages that may
accrue thereon, he having transferred to me, in con-
sideration of said assumption, and $7,500 to him paid,
an undivided one-fourth interest in his steam flouring
mill and distillery, and brick rectifying house, known
as the Bell property, in Chattanooga, Tennessee, with
all the rights and privileges unto them belonging, or
to said one-fourth interest appertaining, as shown more
fully by his deed to me of even date herewith."

The defendant, Summers, went into possession of
the property bought at once, receiving the rents, is-
sues, and profits of the business to the extent of his
one-fourth share.    The business of the mill and dis-
tillery was at the time profitable, the net proceeds
being shared by the joint-owners and partners as they
were earned, and so continued until Chattanooga was
occupied by the Federal armies.    During their occu-
pation the buildings on the land were destroyed.    After
the war the Union Bank filed a bill against Snyder

and others, to which Summers was no party, to enforce its lien for the unpaid purchase money, no part of which had been paid by Summers. By the same bill the bank attached other property of Snyder in order to cover any balance of debt after exhausting the land on which the lien had been retained. Pending this suit, on the 22d of July, 1869, the bank entered into a written agreement with Snyder, by which it agreed to take the Bell property, and all of the individual property of Snyder which had been attached, except one lot, in satisfaction of the unpaid purchase money, with the further stipulation that if Snyder would pay $5,000 the bank would receive it in full for its debt. On the 29th of July, 1869, the bank took a decree, subject to this agreement, for $14,740, the balance then due, including interest, of the original debt of $20,000, and an order for the sale of the Bell property, and other property surrendered to it by Snyder. The agreement with the bank was communicated by Snyder to Summers, and the latter promised to aid in raising the means to pay the $5,000 agreed to be received in satisfaction of the entire bank debt. The time of payment seems to have been extended at his request. Nothing was, however, done in the matter. On the 30th of November, 1869, the order of sale in favor of the bank was executed, and the sales were confirmed on the 25th of January, 1870. The Bell property sold for about $3,000, its value at the time. The individual property of Snyder brought in addition about $2,000. On the 3d of October, 1870, Snyder filed his origi-

nal bill in this cause to hold Summers liable in his obligation of the 14th of February, 1863, jurisdiction being given to the Chancery Court by a conveyance of his property to one of his co-defendants to hinder and delay creditors. The defendant answered and filed a cross-bill, claiming that his obligation should have been only for $2,500 instead of $5,000, and that it had been paid by him. He also insisted that upon a partnership account Snyder would be brought in debt to him. These defences not being made out, as they clearly are not, Summers, on the 8th of March, 1873, filed an amended cross-bill, in which he relies upon the failure of consideration to him by the sale of the Bell property under the bank lien, and asks a recovery of the complainant's warranty of title in his deed of conveyance of the one-fourth interest. Such proceedings were had that, on the 16th of September, 1874, a final decree was rendered in favor of Snyder against Summers for the sum of 2,273.87, being $1,728.93 as of the date of the sale by the bank with interest. The latter appealed.

The evidence in this cause renders it certain that the profits of the mill and distillery property, and the proceeds of the sale of stock on hand and saved when the Federal army entered Chattanooga, were so divided between the co-owners and partners that neither could demand an account, and that an account would be of no advantage to the defendant. It is equally certain that he never paid either to the Union Bank or to the complainant any portion of the purchase money of the Bell property. The litigation turns, therefore,

on the relative rights of the parties under the deed and obligation of the 14th of February, 1863. By his deed of that date, Snyder conveyed one undivided fourth of the Bell property to Summers in fee, with covenant of warranty. By his obligation of the same date, Summers undertook, in part consideration of the purchase, to pay his share (one-fourth) of the bank debt, which was a lien on the property. The substance of the transaction then, is, that the vendor, the owner of property subject to a lien or mortgage in favor of the bank, sells a part of the property to the vendee, in consideration of the latter, as part of the purchase money, paying one-fourth of the prior lien. The rights of parties under such circumstances are well settled.

Independently of contract, whenever a mortgage debt forms a part of the consideration of purchase, equity has always implied a promise on the part of the vendee to indemnify the vendor against the personal obligation to pay the mortgage money; for having become owner of the estate, he must be supposed to intend such indemnity. *Tweddell* v. *Tweddell*, 2 Bro. C. C., 152; *Waring* v. *Ward*, 7 Ves., 337; *Champion* v. *Brown*, 6 Johns. Ch., 409; *Tichenor* v. *Dodd*, 3 Green Ch., 454. Of course a positive promise fixes the liability beyond question, and establishes between the parties the relation of principal and surety. It has been repeatedly determined that where a person buys land absolutely for a stipulated price, and, instead of paying the whole of it to his grantor, is allowed to retain a part, which he agrees to pay to

a creditor of the grantor having a lien upon the land, the amount which he thus agreed to pay is his own debt, and although this arrangement does not discharge the grantor from liability to the lien creditor, who is no party to it, yet, as between the grantor and the grantee who has thus assumed the debt, the grantor is a mere surety. *Marsh* v. *Pike* 1 Sandf. Ch., 210; S. C. on Appeal, 10 Paige, 595; *Garnsey* v. *Rogers*, 47 N. Y., 239; *Corbett* v. *Waterman*, 11 Iowa, 86; *Hebert* v. *Doussan*, 8 L. Ann., 267. The undertaking of the purchaser to pay the lien debt, even if the undertaking be in parol, would be enforced in equity, and a covenant of warranty in his deed would not estop the complainant, nor would any other of the usual covenants, from recovering on such undertaking. *Bolles* v. *Beach*, 2 Zab., 680; *Wilson* v. *King*, 8 C. E. Green, 150; *Bowen* v. *Kurtz*, 37 Iowa, 239. And *a fortiori* if the promise be by an obligation of equal dignity with the deed containing the warranty. *Drury* v. *Tremont Improvement Co.*, 13 Allen, 168; *Colgin* v. *Henley*, 6 Leigh, 85; *Brown* v. *Staples*, 28 Me., 497; *Watts* v. *Wellman*, 2 N. H., 458; *Morgan* v. *Smith*, 11 Ill., 201. A stipulation by which a purchaser "assumes and agrees to pay" a mortgage has been held to be a contract not merely to indemnify the grantor, but to pay the debt, and sufficient to sustain an action by the promisee, without first having paid the debt. *Furnas* v. *Durgin*, 119 Mass., 500; *Rubens* v. *Prindle*, 44 Barb., 336; *Bowen* v. *Kurtz*, 37 Iowa, 239. And of course such a promise would sustain an action after payment. *Mills* v. *Watson*, 1

Sweeny, 374; *Kinncar* v. *Lowell*, 34 Me., 299. It is not material to the application of these principles that the purchaser should be liable directly to the lien creditor. The weight of authority is that the covenant of the purchaser to the vendor to pay a mortgage is a collateral security which enures to the benefit of the lien creditor only by way of equitable subrogation. *Crowell* v. *Currier*, 27 N. J. Eq., 152; *Pettee* v. *Peppard*, 120 Mass., 522. A purchaser of a portion of mortgaged premises, who assumes the payment of a proportionate share of the mortgage debt, is to that extent liable as the purchaser of the whole property. *Torrey* v. *Bank of Orleans*, 9 Paige, 649; S. C. on Appeal, 7 Hill, 260. The measure of damages in an action by the grantor against his grantee upon his promise to pay a lien debt is the amount of the debt and interest remaining unpaid. *Furnas* v. *Durgin*, 119 Mass., 500. The defendant, by his obligation of the 14th of February, 1863, which was of equal dignity as the deed contemporaneously executed, became, to the extent of the $5,000 assumed, the principal debtor, the complainant becoming as to him only the surety, and if he allowed the land to be sold for that part of the debt it would be his loss. The deed should be read as if the obligation were incorporated in it.

In that view, the warranty of title contained in the deed would be against all claims except the claim of the Union Bank, to the extent of the $5,000 assumed by the vendee. If, now, the land had been sold in satisfaction of the bank lien, for any part of

the debt over and above the $5,000 assumed, it is clear there would have been a breach of the warranty. While the complainant might have been entitled to recover on the obligation, the defendant would also be entitled to recover on the warranty. The record shows, however, that before any sale the bank relinquished a part of the debt so as to reduce the amount below the sum which the defendant had obligated himself to pay. Legally, therefore, there could be no recovery on the warranty. But in equity the reduction thus gratuitously made by the bank must enure to the benefit of all the co-owners. If the complainant had paid the $5,000 agreed to be received by the bank—and this was what was substantially done by the sale and surrender of his property—he could only have recovered from the defendant his share of this burden, which would be in the proportion he would have been bound for the balance of the debt had there been no compromise. The whole unpaid balance on the 29th of July, 1869, was $14,740. Up to the same date the defendant's liability would have been, including interest, $7,366, almost exactly one-half. Dividing the $5,000 in that proportion would make the defendant's liability $2,500, from which must be deducted his share of the sales, $750. The residue, $1,750, is so near the sum found by the Chancellor, $1,728.93, that it is not worth while to change the latter.

The decree will be affirmed, leaving the costs below to go as adjudged by the Chancellor. The appellants will pay the costs of this court.