CLARINDA NATIONAL BANK, Appellant, v. W. W. KIRBY, Appellee.

**MORTGAGES:** Fraud in Assumption of Debt. Record held to abundantly justify an instruction on the issue of conspiracy to fraudulently induce defendant to assume the payment of a mortgage debt.

**TRIAL:** Instructions—Undue Emphasis. The act of the court in marking a requested instruction as "given," and *attaching* it to the other instructions given by the court, does not constitute error—does not work a giving of undue prominence to such instruction.

**MORTGAGES:** Plea of Fraud in Assumption of Debt. The plea that the assumption in a deed of the payment of a mortgage debt was fraudulently obtained, is available against *anyone* who seeks to enforce the agreement. It is quite immaterial that the mortgage debt is evidenced by negotiable notes.

**FRAUD:** Representation in re Value. Principle reaffirmed that a representation of the "value" of a thing to one who has no knowledge thereof, and for the purpose of inducing action, constitutes an actionable fraud.

**ESTOPPEL:** Negligent Delay in Asserting Right. Delay in asserting a right becomes quite immaterial when no one has been in the least injured thereby.

**APPEAL AND ERROR:** Harmless Error—Untenable Objection to Immaterial Testimony. Sustaining an untenable objection to wholly immaterial testimony is harmless error.

*Appeal from Taylor District Court.*—P. C. WINTER, Judge.

JUNE 25, 1921.

ACTION at law, to recover from the defendant, Kirby, the amount of a promissory note made by Ed L. Dryden and L. N.

Cleveland to the order of J. T. Harrell, of which Kirby is alleged to have assumed payment. Kirby resists the demand thus made, on the ground that the alleged contract for the assumption of the debt was obtained from him by fraud. Verdict and judgment for defendant, and plaintiff appeals.—*Affirmed.*

*W. M. Jackson* and *Flick & Flick,* for appellant.

*H. P. Jaqua* and *Frank Wisdom,* for appellee.

WEAVER, J.—On September 8, 1917, Ed L. Dryden and L. N. Cleveland were associated together as real estate agents, doing business in the city of Clarinda, Page County, Iowa, and having their office in the same building with the plaintiff bank, of which they were customers. They had recently acquired the legal title to 80 acres of land in Madison County, incumbered by mortgage liens to the amount of $4,000, an amount which, according to the undisputed evidence, exceeded the value of the property. On the day named, the bank, acting by its president, one J. T. Harrell, who had formerly lived in Madison County, took the promissory note of Dryden and Cleveland for $3,000, secured by mortgage on this land. Harrell knew that the security so taken was subject to the prior liens. Although, as plaintiff concedes, the alleged loan of $3,000 to Dryden and Cleveland was a bank transaction, the note and mortgage were made out to Harrell, who indorsed the note without recourse, and made formal assignment of the mortgage to the bank. This transaction having been completed, Dryden and Cleveland conveyed the title of the land to O. B. Kempton, the father-in-law of Dryden. Kempton, in turn, made out a deed, leaving the blank for the grantee's name unfilled. This deed contained a clause by which the grantee assumed payment of a mortgage indebtedness on the land to the amount of $7,000, an amount evidently made up by the first mortgage liens and the Dryden and Cleveland mortgage. The next appearance of the blank deed was in the hands of one Shoop, whose part in the drama will become evident as we proceed. As a witness, he admits he has no

1. MORTGAGES:
fraud in assumption of debt.

acquaintance with Kempton, the named grantor in the blank deed, and says he received it from Dryden; and, while describing himself, by way of conclusion, as "owner" of the land at that time, he does not say, even inferentially, that he ever invested a dollar in the property, or ever had a deal of any kind with Kempton. Though the deed contained the assumption clause binding the grantee to pay liens to the amount of $7,000 upon property worth only about $3,000, he declares he does not remember whether, in taking the deed from Dryden, he understood that he was taking upon himself any such burden; and finally, being pressed for an answer, he says, "There was nothing said about it."

In the logical order of events, the introduction of the defendant, Kirby, to his place in this somewhat complex, yet quite transparent, narrative becomes necessary. Kirby was the proprietor of a mercantile business, carrying a small stock of goods of the value of about $2,000, at the town of Gravity. He was in ill health, and desired to sell out and move to Colorado, and Dryden and Cleveland were his agents, to find a purchaser. The agents understood that Kirby did not wish to make a trade or exchange, but to sell. In professed pursuance of their agency, they brought Shoop to Kirby's place of business, and presented him as a prospective buyer. Kirby put a price of $2,000 on his stock, and, after the usual interchange of offers and counter offers, the difference between the parties was reduced to $30, Kirby offering to sell for $1,900, and Shoop offering to pay $1,870. At this point, Shoop, in whose pocket was the blank deed which he had received from Dryden, said he had an equity in some Madison County land, which he would not want if he went into the mercantile business, and proposed to transfer it to Kirby, in addition to the cash offer of $1,870. Cleveland advised Kirby to take it, telling him that he was getting it for practically nothing; that the equity was really worth from $800 to $1,000; and that he (Cleveland) would undertake to sell it for that amount. Kirby had in his employ in the store a salesman in whose judgment he had some confidence, and, calling him aside, he asked his opinion. The salesman, to whom Cleveland had already promised a reward, if he would help put the deal through, and whose palm was thereafter crossed by Cleve-

land to the tune of $25, told him it was a good offer, and advised him to accept. Kirby took the advice of his agent and salesman, and the deal was accomplished. In doing this, he says he relied upon Cleveland's assurance of the value of the land. Defendant had never seen the land, and knew nothing of its character or value. Shoop at once gave his check to Kirby for $1,870, and took possession of the stock, which he turned over to Dryden and Cleveland, who proceeded to close it out. The blank deed from Kempton was filled in with the name of Kirby as grantee, and left with Cleveland to be recorded. The circle was thus completed; and these agents, bound by every principle of honor, law, and equity to protect and promote the interests of their principal, had succeeded in foisting upon him, without any valuable consideration, a personal obligation to pay their own debt to the amount of $3,000, and the still further sum of $4,000 to creditors unnamed, but whose identity with these conspirators would not be a hazardous conjecture. Kirby swears that he was in utter ignorance of the fact that Dryden and Cleveland had any private interest in the deal,—a statement which can well be credited; for nothing but confidence in the integrity of his agents could have led even so dull a man as he appears to be into the trap which had been set for him.

Neither the man Kempton nor the agent Dryden himself appeared upon the witness stand, nor did Shoop make any effort to explain away the appearance of fraud attaching to his own conduct in the premises; while Cleveland's story, both in what he says and in what he does not say, only strengthens the conclusion that the charges made by the defense are the substantial truth. That Dryden, Cleveland, Kempton, and Shoop were in combination to bring about the shifting of the burden of Dryden and Cleveland's debt, by the device of making that debt a lien upon a worthless property and then inveigling some incautious or unwary victim into buying it and assuming such burden, is not open to reasonable doubt. Of Harrell's position in the matter we will speak later. The manipulations to which the title to this land, already mortgaged for much in excess of its real value, was subjected in the short period of less than two weeks immediately following the time when Dryden and Cleveland became Kirby's agents, are quite illuminating. These

agents had already taken the title from one Kopke, and it must have been in them on September 8th, the date of the loan to them. Some time between September 8th and September 11th, it was transferred to Kempton, the convenient father-in-law of Dryden. Strategy suggested the desirability of introducing into the chain of title the name of another person, less intimately connected with Cleveland or Dryden, and a convenient instrument was found in Shoop, to whom was delivered a deed (in blank) from Kempton; and thus supplied, Shoop was prepared to play his part, which he did for a day, and then retired, leaving the spoils in the hands of Cleveland and Dryden. The deed from Kempton or Shoop to Kirby was left with Cleveland, who caused it to be recorded, and then added a further knot to the complication by negotiating an exchange with one Mitchell of the worthless equity in this land for another equally worthless somewhere in Dakota.

Returning now to the issue joined in this action. The plaintiff, which was represented by Harrell in the alleged loan to Cleveland and Dryden, instituted suit on the note given by the latter in that transaction, and seeks to charge Kirby with personal liability for the amount thereof, because of the provision in the deed from Kempton to Kirby, by which the latter assumed payment of liens to the amount of $7,000. No attempt is made to foreclose the bank's mortgage. The action is at law, aided by an attachment levied on other property owned by Kirby. Appearing to the action, Kirby denies any liability to pay the note, alleges that the so-called assumption of the debt was obtained by fraud and false representations, and by conspiracy between his agents, Cleveland and Dryden and others, including Harrell, representing the bank. On trial to a jury, a verdict was returned for the defendant; and, its motion for new trial being denied, plaintiff appeals.

I. Confining our review of the case to the objections raised and points discussed in appellant's argument on appeal, we first consider the exception taken to Paragraphs 5 and 6 of the court's charge to the jury on the subject of conspiracy. Referring to these instructions, appellant says, ''We have no fault to find with the abstract proposition laid down by the court;'' but it bases its objection on the proposition that there is no evi-

dence in the record justifying them, or calling for instructions on law of conspiracy. The exception would have to be sustained, were it true that the record is barren of evidence fairly tending to establish the existence of the alleged conspiracy; but we are of the opinion that the record contains abundant material for the consideration of the jury in that question. Passing, for the moment, the part of Harrell in these transactions, the fact that Cleveland and Dryden, with the aid and co-operation of Kempton and Shoop, corruptly combined and confederated to impose upon Kirby, without consideration to him, personal liability for the debt of Cleveland and Dryden to the amount of $3,000, is so clear as to admit of no reasonable doubt. Participation by Harrell in such scheme is not, as we shall see, vital to Kirby's defense; but we are well convinced that a finding by the jury that he did have a part in it could not be set aside as lacking support. It is true, he says that the loan to Cleveland and Dryden was an ordinary banking transaction, made by him in good faith, and that the loan was secured by mortgage on this land; but the attendant circumstances affecting the credibility of the testimony are quite significant. He admits that he knew Cleveland and Dryden well, officed in the same building with them, and had been in the habit of loaning them money to finance or handle their real estate deals. It is shown that he had formerly lived in the neighborhood of this land, and presumably knew something of its character and value. He does not show that he even asked any questions in regard to the security so offered him, or pretend that he was ignorant of the fact that the land was already mortgaged for far more than it was worth. He could not have relied, in taking such worthless security, upon Kirby's assumption of the mortgage debts, because, at that time, Kirby had not yet been tangled in the web woven for him by Cleveland and Dryden, and his promise to assume had not yet been made. Taking it all in all, it bears upon its face very slight indicia of an ordinary banking transaction. We are satisfied that the question of the alleged conspiracy was for the jury, and there was no error in these instructions.

II. The second division of the appellant's argument is multiple in form. Its first proposition is that Cleveland and Dryden were acting in the capacity of agents for Kirby, and to

that end, did no more than to bring Kirby and the purchaser, Shoop, together, and thereby earned their proper commission. We have already sufficiently expressed our view upon the merits of this part of plaintiff's claim. It has none.

2. TRIAL: instruc-
tions: undue
emphasis.

Complaint is also made that, the defendant having submitted to the court several requests for instructions to the jury, the court approved one, and, separating it from the other requests, attached it to the charge which the court had prepared on its own motion, and in that manner gave it to the jury. The instruction was to the effect that the question or relation of "innocent purchasers" was not involved in the case, and that the plaintiff's claims in this case are subject to all the equities between defendant and Kempton, in the deed from whom the assumption clause is found. The chief criticism of this paragraph is that the manner in which the court attached it to its own charge to the jury had the effect to give it undue emphasis or prominence, and thereby tended unduly to divert the attention of the jurors from the consideration of other essential features of the case.

The giving of proper instructions asked by parties to a jury trial is a practice the propriety of which is too well settled for dispute. It is, perhaps, the better practice for the court to embody in its own charge the matter of the approved request; but the giving of it as at the request of the party offering it, and entitling as such, is not erroneous. The substance of the request, in this instance, is not objectionable.

The appellant is not in position to claim any rights as an innocent purchaser. The defendant is not liable as a maker of the note, nor as indorser or guarantor thereof. If liable at all,

3. MORTGAGES:
plea of fraud
in assumption of
debt.

it is upon the alleged contract found in the Kempton deed to him, to assume and pay the mortgage debt. That contract or agreement is nonnegotiable; and, in the absence of any estoppel, he may plead and prove, if he can, that it was obtained by fraud or false representations, or was wholly without consideration, as against any person seeking its enforcement.

III. The eighth and ninth paragraphs of the court's charge are challenged, on the ground that the burden of proof thereby

laid it upon the plaintiff or Cleveland to negative the alleged false representation by the former. This claim indicates a clear misapprehension of the court's language. The effect of these paragraphs is to permit the defense of false representations to prevail, only in the event that "such representations are shown by a preponderance of the evidence to have been made." They further warned the jury that "fraud is never presumed, but must be affirmatively proved." The assignment of error upon these instructions is not well made.

IV. The defendant's evidence tended to show that he was induced to take the Kempton deed from Shoop on Cleveland's assurance that there was an equity in the land of from $800 to

4. FRAUD: representation *in re* value.

$1,000, and that, if Kirby would take the deed, he (Cleveland) would undertake to sell the land for that. Appellant takes the position that the trial court erred in admitting this evidence and submitting such issue to the jury, because such statements are mere expressions of opinion, and not actionable, even if false. The law upon this question has been too frequently discussed by this court in recent years to justify us in citing authorities. It is thoroughly well settled that, if false representations of value to one having no knowledge of the truth are made, for the purpose of influencing the action of the person addressed, who reasonably relies thereon to his injury, they do constitute actionable fraud.

The further objection is that defendant did not act thereon with reasonable promptness. There is no showing or suggestion that the delay has in any manner misled the plaintiff or put it

5. ESTOPPEL: negligent delay in asserting right.

to any loss or disadvantage. Plaintiff's own evidence shows that Cleveland and Dryden, the makers and real debtors upon this note, have at all times been and still are the customers of the bank, maintain a deposit there, and are financially responsible; and the fact that it does not even make Cleveland and Dryden parties to the suit upon their own note, or proceed to collect the debt from them in the manner usually employed between banks and their customers, makes it reasonably plain, to say the least, that its anxiety in the premises has its root in a desire to help out Cleveland and Dryden in the accomplishment of a palpable wrong,

rather than in any fear that the note is not easily collectible from the men to whom it lent its money.

V. In the course of the trial below, the plaintiff introduced certain exhibits, the precise character of which is not clearly stated; but we infer from the argument that they were original files from the office of the clerk of Madison County, in a mortgage foreclosure upon the land in controversy. The papers and records so exhibited were objected to as not properly identified or authenticated. The objection was overruled, and plaintiff assigns error thereon.

6. APPEAL AND ERROR: harmless error: untenable objection to immaterial testimony.

If the ruling was erroneous, we think it was without prejudice. It was undisputed that the land was subject to mortgage liens to the amount of $7,000, and it was shown without dispute that the value of the land was less than $3,000. The exhibits in question indicate a foreclosure of a mortgage lien of about $1,000. Why it was thought necessary to introduce this evidence, we do not know. It seems to add nothing to the conceded showing of the burdens upon the title to the property, but we see no way in which the plaintiff was thereby prejudiced. The record as a whole discloses no sufficient reason for disturbing the verdict of the jury, and the judgment for defendant will be affirmed.

VI. There is also an appeal by the defendant from an order of the trial court permitting the plaintiff to substitute copies of the Cleveland and Dryden mortgage to the bank, and of the deed from Kempton. The affirmance of the judgment below on plaintiff's appeal renders the matters complained of on the defendant's appeal unimportant and immaterial, and we shall not consider it, except to say that, if it be conceded that the order is an appealable one, we incline to the view that it was not erroneous. It follows from the foregoing discussion that the judgment of the district court is affirmed on both appeals.

Of the costs in this court, one fourth will be taxed to the defendant and three fourths to the plaintiff.—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.