Union Central Life Insurance Company of Cincinnati,
Ohio, Appellee, v. William B. Mitchell et al., Appellees; Joe Horn et al., Appellants.

February 14, 1928.

Rehearing Denied May 18, 1928.

*C. Ver Ploeg* and *Campbell & Campbell*, for appellants.

*Hansen & Hansen, McCoy & McCoy*, and *J. C. Heitsman*,
for cross-petitioner, appellee.

Albert, J.—William B. Mitchell was the original owner of
the land in controversy, which was subject to a first mortgage

to the Union Central Life Insurance Company of Cincinnati, Ohio. This company started foreclosure of its mortgage, and decree of foreclosure was entered therein on April 14, 1925. On April 4, 1925, in the same proceedings, the Carbondale Land Company filed a cross-petition on a second mortgage alleged to be held by it, and made Joe and Margaret A. Horn and Mary and Walter Johnson defendants in this cross-petition.

It appears that, on March 1, 1920, Mitchell deeded the land in controversy to Joe and Margaret A. Horn, and on the same date, and as a part of the same transaction, Joe and Margaret Horn executed their joint promissory note to C. Ed Beman for $13,000, and secured the same by a second mortgage on this real estate. Later, the Horns deeded this land to Mary Johnson, who assumed and agreed to pay the aforesaid second mortgage and note. On November 7, 1922, Mary Johnson entered into a written contract with Mary Waller Rea to sell this land, together with certain other tracts, to the said Mary Waller Rea, the material part of which contract will be referred to later. On November 28, 1924, the said C. Ed Beman made a written assignment of said second mortgage and note to the Carbondale Land Company.

The cross-petition of the Carbondale Land Company seeks judgment on the note against John and Margaret A. Horn and Mary Johnson, and a foreclosure of the second mortgage. The district court granted the relief prayed in the cross-petition, and hence this appeal.

Appellants assert four errors on which they rely for reversal:

First: "Because Mrs. Rea was the equitable owner of the land, and the person primarily obligated on the indebtedness, the mortgage was, in legal contemplation, paid when she acquired it."

The argument advanced to support this contention is that Mrs. Rea became the equitable owner of the land by reason of her contract with Mrs. Johnson, and assumed and agreed to pay the mortgage as part of the purchase price; that, when Mrs. Rea became the owner of the mortgage,—she being primarily liable for the indebtedness therein secured,—the debt was paid. If we assume, without deciding, that the principle of law underlying this contention of the appellants' is an accurate exposi-

tion of the law, the question is whether or not, under the facts in this case, the principle would have any application. It appears from the evidence that, when Mrs. Rea entered into the contract with Mrs. Johnson for the purchase of this and certain other tracts of land, she made no down payment thereon, nor did she make any of the payments provided for in said contract. The heart of the contention of appellant, however, is that Mrs. Rea assumed and agreed to pay this mortgage, and therefore became the primary debtor, and when she became the owner (if she did), the mortgage in law is, therefore, paid. The weakness of this whole contention lies in the major premise that Mrs. Rea assumed and agreed to pay the mortgage. We have before us the contract, and it in no place provides that Mrs. Rea assumed and agreed to pay this mortgage, and further than this, it does recite that certain payments are to be made, and ''balance of $80,000.00 by taking said land subject to the mortgages to that amount now against said land together with interest on all of said mortgages unpaid and due during the year 1922.'' It might be said, by way of explanation, that this contract not only covers the land in controversy herein, but two other tracts of land. It also describes the farm as ''the Mitchell farm,'' subject to an incumbrance of $28,000. (The first mortgage was for $15,000.) It is quite apparent, therefore, that this contention of the appellants' must fail, because, under the contract, Mrs. Rea was not primarily liable for this debt.

It is next contended that:

''By extending time of payment to the primary obligor, without the knowledge or consent of defendants Horn, who were only secondarily liable after others assumed the debt, the mortgagee released defendants Horn, especially under the Negotiable Instrument Law.''

This contention is bottomed on the following matters shown by the record: The Johnsons were unable to pay interest when it became due, and they turned over the lease on the property  to the holder of the mortgage, with the understanding that the holder was to collect the rent as it became due, and apply the same on the past-due interest. We are quite familiar with the rule that extension of time on an indebtedness, without the

consent of the surety, releases the surety; but that doctrine has no application to the situation before us in this case. It is fundamental that, to make a valid extension of time such as would release the surety, there must be a consideration therefor; and there is no showing whatever in this case that, if this matter were to be treated as an extension of time, there was any consideration therefor; and further, there was no fixed time of extension. To our minds, this was not, in reality, such an extension of time as the law contemplates, but simply gave additional security for unpaid interest. We do not, therefore, think there is anything for appellants in this contention.

The third contention of appellants is that:

"The cross-petitioner is not a holder in due course, and for that reason the counterclaim of defendants on account of damages for breach of contract to purchase the land· on the part of the defendant Mary Waller Rea may be offset against the note sued upon."

As against the note, there is no plea of fraud in its inception, and the Carbondale Land Company was in possession of said note and mortgage at the time of suit, under a written assignment. The same was not due until the 1st of March, 1928, and the Carbondale Land Company purchased it on November 28, 1924. As heretofore stated, Mary Waller Rea did not assume and agree to pay such mortgage. It may be true that the Johnsons had a counterclaim against Mary Waller Rea for a breach of the land contract; but we are unable, under the pleadings and evidence in the case, to see how that would be available as against the Carbondale Land Company, the assignee of this mortgage. The evidence shows that the Carbondale Land Company was in possession of this mortgage and note under this assignment from C. Ed Beman, and, having acquired the same before it was due, it is a prima-facie holder for value before maturity, and therefore an innocent purchaser. Since it was such, the counterclaim alleged would not lie, as against its rights.

We might say incidentally here that the appellants argue that the Carbondale Land Company was not the actual owner of said mortgage, because it is claimed that the same belonged to Mary Waller Rea. We have reviewed the evidence quite care-

fully, and, remembering that the burden was on the defendants on this contention, we are satisfied that the evidence does not establish that she was the owner of the mortgage. The most that could be claimed for the evidence is that the Carbondale Land Company was the holder of the same as collateral. That a person so holding as collateral is a bona-fide holder, we have repeatedly held. We can see nothing in this contention for the appellants.

The last contention of appellants is that:

"The cross-petitioner should, in any event, be compelled to resort first to other collateral securities held by it, and the defendants should be subrogated to the rights of the cross-petitioner in said securities."

The pleadings do not raise this issue, and further, the evidence in the case shows that whatever other collateral security was held by the Carbondale Land Company belonged to Mary Waller Rea, and was practically worthless.

The ruling of the district court was right, and is affirmed. —*Affirmed.*

STEVENS, C. J., and FAVILLE, DE GRAFF, and MORLING, JJ., concur.