IOWA TITLE & LOAN COMPANY, Appellee, v. CLARK BROTHERS et al., Appellants.

No. 39394.

APRIL 2, 1929.

REHEARING DENIED NOVEMBER 22, 1929.

*D. N. Clark,* for appellants.

*Anderson & Perry,* for appellee.

EVANS, J.—I. The notes in suit were signed by Clark Brothers and the individual members of the firm and their wives. The defendants herein comprised the firm and one partner and his wife. For convenience of discussion, we shall refer to the *defendant* in the singular number. The affirmative facts relied on as a defense may be stated briefly.

On February 1, 1918, the defendant obtained from the plaintiff a loan of $10,000, to be due in five years from date. The debt was evidenced by a series of promissory notes, and was secured by a first mortgage upon real estate. In January, 1920, the defendant sold the real estate to Dunkin, who assumed and agreed to pay the mortgage. The notes in suit are two of the series which evidenced the loan. After his purchase, Dunkin paid the annual interest until the due date of the mortgage, February 1, 1923. On or about that date, a contract of extension was entered into between him and the plaintiff, purporting to extend the time of payment of the principal debt for five years from February 1, 1923. By such contract Dunkin agreed to pay to the plaintiff the full amount of such debt, with interest, on February 1, 1928. He also executed and delivered to the plaintiff interest coupons for semiannual interest at 6 per cent from February 1, 1923, to February 1, 1928. He paid all accruing interest up to February 1, 1926, and defaulted on February 1, 1927. This action is brought to recover the principal sum of the two notes, with interest thereon from February 1, 1926.

The argument for the appellant is that, by the assumption of

the mortgage as a part of the purchase price of the land, Dunkin became primarily liable for the debt, and that, as between the vendor and the vendee, the vendor was secondarily liable only; that the new relation of this defendant to the debt as thus created became fully known to the plaintiff; and that it acquiesced in and accepted the same; that the extension of the time of payment in the manner indicated, without the knowledge or consent of the defendant, operated as a discharge of the defendant from all liability upon the note. The argument has much logical force, and is adopted in the decisions in some states. It would be entitled to much consideration here, if the question were an open one in this state. Such question is fully foreclosed, however, by a long line of our decisions, beginning in a very early day. These are the following: *Corbett v. Waterman,* 11 Iowa 86; *Massie v. Mann,* 17 Iowa 131; *James v. Day,* 37 Iowa 164; *Robertson v. Stuhlmiller,* 93 Iowa 326; *Iowa L. & Tr. Co. v. Haller,* 119 Iowa 645; *Mowbray v. Simons,* 183 Iowa 1389; *Clarinda Nat. Bank v. Kirby,* 191 Iowa 786; and *Baldwin v. Munger,* 200 Iowa 32.

In the *Corbett* case, 11 Iowa 86, it was held that though, as between vendee and vendor, the vendee by his assumption makes the debt his own, and becomes primarily liable therefor, yet such assumption has no qualifying effect upon the rights of the mortgagee, other than to enhance. The mortgagee relinquishes nothing, as against his mortgagor. He may enforce the obligation assumed by the vendee or not, as he may choose. He may enforce it in whole or in part, or he may ignore it entirely; and, as against the mortgagee, the mortgagor is not deemed to be surety. He still continues as a principal. This holding has been reaffirmed and somewhat amplified in the later decisions herein cited. Under these authorities, the extension of time, if such, which was granted to the assumptor was not binding upon the vendor, as mortgagor, and could not operate prejudicially to him. The vendee was bound to the vendor by his covenant to pay the mortgage when it fell due. The extension of time granted or suffered by the mortgagee did not supersede that covenant. The vendor could have sued for a breach of it on and after February 1, 1923, and could have compelled payment, notwithstanding the extension. The general theory of our past cases on this subject is that the assumption of a mortgage by a vendee of land operates as a mere gratuity to the mortgagee. His rights thereunder *spring*

from the express agreement of the parties, made in his behalf as a third party. As we said recently in *Shult v. Doyle,* 200 Iowa 1:

"The cause of action thus created in his favor is 'a bit of legal grace; it cost him nothing; it simply fell upon him, without effort or knowledge on his part. He is entitled to it, such as it is. He has no ground of appeal to equity, either to expand it or to prevent its shrinkage."

Various phases of the question are considered in the authorities above cited, and we see nothing to be gained herein by an extended review of them.

II. It is contended by the appellant that our previous holdings, as above set forth, have all been superseded by the enactment of Section 9581, Code of 1924, in the Negotiable Instruments Law, which provides as follows:

"9581. *When persons secondarily liable on—discharged.* A person secondarily liable on the instrument is discharged:

"1. By an act which discharges the instrument.

"2. By the intentional cancellation of his signature by the holder.

"3. By the discharge of a prior party.

"4. By the valid tender of payment made by a prior party.

"5. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved.

"6. By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

It is urged that this section is conclusive of the whole question. The essential ground of this contention is that the defendant was "secondarily liable" only. But the holding of our cases, as already indicated, is that, as between mortgagor and mortgagee, the liability of the mortgagor does not become secondary. The liability of the assumptor is upon his covenant in the deed. An action against him must be predicated upon such covenant, whether brought by vendee or by mortgagee. Such is

the clear purport of our past holdings, and they are not affected by the enactment of Section 9581.

III. It is further urged by the appellant that our previous cases should be deemed overruled by a decision of the Supreme Court of the United States, or else that we should overrule the same in deference to such decision. The case cited is *Union Mut. Life Ins. Co. v. Hanford*, 143 U. S. 187. In the cited case, the mortgage involved in the foreclosure was an Illinois contract. The plaintiff brought his suit in the Federal court, invoking the jurisdiction thereof on the ground of diverse citizenship. It involved the question here under consideration. The Supreme Court held that the question presented must be decided under Illinois law. Illinois is one of the states wherein the rule contended for by the defendant is recognized. The Supreme Court applied such rule to the case before it in obedience to the law of Illinois. This is only to say that, if the mortgage had been an Iowa contract, the Supreme Court would have enforced the contrary rule, in obedience to Iowa law. The decision relied on presents no conflict, as between us and the Supreme Court of the United States. It does disclose a diversity of decision as between the higher courts of the two states. Such diversities of human judgment are unavoidable in some degree. When they occur, neither court is at liberty to ignore its own decisions in deference to those of another, because its own decisions have become the law of the state and a rule of property.

The judgment of the district court was properly obedient to the rule long established in this state. It is, accordingly,—*Affirmed*.

ALBERT, C. J., and STEVENS, FAVILLE, MORLING, and WAGNER, JJ., concur.

DE GRAFF and KINDIG, JJ., dissent.

DE GRAFF, J. (dissenting).—I respectfully dissent to the affirmance of this cause. I feel that an injustice is done to the rights of the appellants by reason of a misinterpretation and misapplication of the law in reaching the conclusion announced by the majority opinion. Until a question is settled authoritatively, it is never settled, but remains a controversy, and as such,

gives rise to continuous litigation, the very thing that the court should seek to avoid.

Briefly, the facts in this case show that, on February 1, 1918, the defendants (appellants) executed a series of notes, aggregating $10,000, made payable to the plaintiff or its order, on February 1, 1923, *with interest thereon at the rate of 6 per cent,* the said notes being secured by a mortgage upon certain lands, and providing, *inter alia, for interest at the rate of 8 per cent after maturity.* In the meantime, on January 3, 1920, the defendants (mortgagors) sold the lands described in said mortgage to O. H. Dunkin, who, by deed, assumed and agreed to pay the mortgage indebtedness. On February 1, 1923, when the mortgage obligations became due, Dunkin (assuming grantee), joined by his wife, and without the knowledge, consent, or concurrence of these defendants (mortgagors), entered into with, and did execute, acknowledge, and deliver to, the plaintiff, mortgagee, a written agreement, wherein the said Dunkins did ''promise and agree'' to pay the plaintiff (appellee) in five years thereafter, to wit, on February 1, 1928, the said mortgage indebtedness, *with interest thereon after February 1, 1923, at the rate of 6 per cent, and to keep and perform all the conditions of the mortgage;* and the said Dunkins did make, execute, and deliver to the plaintiff, made payable to the plaintiff or its order, *coupon interest notes at the rate of 6 per cent,* which notes were accepted by the plaintiff (mortgagee), and upon which coupon interest notes the said Dunkin and his wife have made payments to, and the same were accepted by, the plaintiff. On February 4, 1928, plaintiff filed his petition in the lower court, declaring upon the express contract found in two of the original notes of $750 each, being a part of the $10,000 series of notes above described, *asking for judgment thereon at the rate of 6 per cent,* being $180 of interest on the said $1,500 for two years, and $7.20 interest on $90 interest thereon from February 1, 1927, to February 1, 1928, at the rate of 8 per cent, making the total interest sum of $187.20, in addition to the principal of $1,500, or a total amount of $1,687.20, shown by the petition and judgment entry in this case.

The defendants, by separate answer, pleaded these facts relating to the giving of the notes and mortgage and the agreement by the said Dunkins with plaintiff, and after alleging that the

said notes and the said mortgage were signed, executed, and delivered as of "one and the same transaction," pleaded the transaction, and relation of principal and surety existing, between the defendants and Dunkin, and claimed a release, by reason of the said new arrangement, "promise, and agreement" made by the said Dunkin (assuming grantee) and his wife with plaintiff. This separate defense was stricken, on motion of the plaintiff, as not defensive, and judgment rendered against the appellants, from which judgment this appeal is taken. Around the correctness of the lower court's decision on this motion this controversy gravitates.

The petition declared upon an express contract shown by the notes, making no mention of the mortgage, other than as mentioned and referred to in the notes themselves. These notes show, however, that the terms and conditions of the mortgage are made a part of said notes. The notes also provide, *inter alia, for interest at the rate of 8 per cent after maturity, from February 1, 1923; yet the plaintiff sought and obtained judgment in the trial court at the rate of 6 per cent, being in accord only with the contract made by and between the plaintiff and the said Dunkins, to which these defendants were not parties.* It will, therefore, be seen that, although the plaintiff declares upon an express contract originally made by the defendants, *providing for 8 per cent interest after maturity, it obtained judgment according to a contract made by the Dunkins, providing for 6 per cent interest*; and thus these defendants were sued, not upon and according to the original contract as made by them, but upon and according to the contract made, as aforesaid, by the Dunkins with the plaintiff.

This state of affairs should not be disregarded in this case. It is universally recognized, as due process of law, that one person cannot be held on, or bound by, a contract made by another. The remedy of the plaintiff is limited strictly and solely to the allegations found in the petition. The prayer for relief forms no part thereof. Clearly, under the law of our state, as declared by this court, *it was erroneous for the lower court to have rendered judgment against the defendants upon a contract contrary to that declared upon, and one not made by these defendants.* In *Bottorff v. Lewis,* 121 Iowa 27, 33, this court said:

"* * * we do not understand the theory on which the court awarded plaintiff seven-thirtieths of the land when she admitted she had but * * * one-tenth interest therein * * *. The relief granted must always be consistent with the case made by the petition * * *." (Citing *Tice v. Derby*, 59 Iowa 312, and Section 3775, Code of 1897 [now Section 11573, Code of 1927]).

This section (11573) provides, among other things, that "the court may grant him [plaintiff] any relief consistent with the case made by the petition and embraced within the issue." See, also, *Watt v. Robbins*, 160 Iowa 587; *Schuster Bros. v. Davis Bros.*, 185 Iowa 143; *Bethany Cong. Church v. Morse*, 151 Iowa 521; and *Walker & Davis v. Irwin*, 94 Iowa 448, 454. There is, therefore, no consistency between the allegations of the plaintiff and the judgment rendered, and it should not be permitted to stand.

As the notes refer to the mortgage, and embody the terms and conditions thereof in the notes, this mortgage instrument is a necessary element, not only showing what the contract was between the parties, but also necessary to state the plaintiff's cause of action, if any, even at law, against these defendants; so that a severance of these two instruments was, in itself, an alteration of the contract, and for this reason the lower court should not be sustained. See *Smith v. Eals*, 81 Iowa 235; and *Conger v. Crabtree*, 88 Iowa 536. This is especially true since the defendants' answer *makes the notes and the mortgage of "one and the same transaction,"* and the plaintiff's motion (demurrer), admitting these facts to be true, resulted in the striking by the trial court of the essential elements of the contract. This is clearly erroneous.

The defendants have set up sufficient facts of the deed to, and an assumption by, Dunkin to show the relation of principal and surety existing at the time of the "promise and agreement" made between the assuming grantee, Dunkin, and his wife, and plaintiff. This brings the case clearly within the line of the decisions of our court *that, as between a creditor who extends the time of payment to an assumptor of a debt evidenced by a note, and the makers of a note who are known by the creditor to be secondarily liable for the obligations, or who are shown, as between original parties to the instrument, to be sureties, by*

*parol evidence or otherwise, aliunde,* the Negotiable Instruments Law applies, in that it is provided (now Section 9518, Code of 1924), that, as between original parties to the instrument, or as to instruments in the hands of any holder other than a holder in due course, *as in the instant case, such instrument is subject to the same defenses as if it were a nonnegotiable instrument.* See *Piper v. Newçomer & Campbell,* 25 Iowa 221; *Kelly v. Gillespie,* 12 Iowa 55; *Corielle v. Allen,* 13 Iowa 289; *Chambers v. Cochran,* 18 Iowa 159; *Lauman, Hedges & Co. v. Nichols,* 15 Iowa 161; and *Fullerton Lbr. Co. v. Snouffer,* 139 Iowa 176.

The *Fullerton Lbr. Co.* case, supra, being one of the first cases, if not the first case, decided on this phase of the Negotiable Instruments Act, and being a controversy between original parties over a note dated January 1, 1905, given subsequently to the Negotiable Instruments Act, is authority for the holding that while, as between a bona-fide purchaser and a maker of a note, secondary liability of a maker could not be shown, yet, as the suit in said case was between the original parties, just as it is between the original parties in the instant case, this secondary liability could be shown. This court said:

"As we understand it, the entire scope and purpose of the act [Negotiable Instruments Act] so far, at least, as it affects the question before us, is to fix the rights of holders in due course and make it uniform in the several states. This, we think, is apparent from the act itself. Thus, Section 3060-a58 [now Section 9518] in terms says: 'In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable.' "

Therefore it was held, *under the Negotiable Instruments Act,* that, if a maker shows suretyship, or it is known to the holder that such maker is surety, as between original parties, he will have every defense as if the instrument were nonnegotiable; *and the court also held that, where the time of payment was extended, as was done in the Fullerton case, and as shown in the instant case, and such extension was made without the knowledge, consent, or concurrence of the party secondarily liable, such party is thereby released.*

The *Fullerton Lbr. Co.* case is clearly applicable to the instant case, and is controlling, because of the fact that, before the

extension of time was made in said case (as in the instant case, between Dunkin and the original mortgagors), the various parties (grantors and grantee) were liable *as principals*; *but when an* extension of time was made to one of these principals, as to Dunkin, in the instant case, with the knowledge that Clark Brothers were, as to Dunkin, *sureties for the debt,* or that the relation of principal and surety existed between them, this extension of time, under the authority of the *Fullerton Lbr. Co.* decision, released the defendants, *because they were surety, as well by their own act as by the act, and with the knowledge, of the plaintiff; and it would be a misinterpretation and a misapprehension of the law and decisions of this state to hold otherwise, and especially to revert to decisions based upon instruments made prior to the enactment of the Negotiable Instruments Law,* even if those decisions were not in harmony with these later decisions of this court.

Moreover, this is especially true in view of the decision in the case of *Malanaphy v. Fuller & Johnson Mfg. Co.,* 125 Iowa 719, which finally brought into harmony the cases of *Corbett v. Waterman,* 11 Iowa 86, and *Robertson v. Stuhlmiller,* 93 Iowa 326, and other like decisions of this court, with the ruling in that case. *As between original parties to an instrument, and with specific reference to an assumptor of a debt and to rights of the creditor* as against original parties who were primarily liable, and now secondarily liable, on the instrument itself, we held, in the *Malanaphy* case, supra:

"Now, *as a creditor for whose benefit a promise is made,* takes [the benefits of an assumption of the debt] subject to the equities existing between the principal parties, *it follows conclusively that, if he accepts of such promise, he becomes bound to observe the relationship of principal and surety existing between the principal parties, and must act in recognition thereof.*"

This decision was rendered subsequent to, and therefore controlling over, the decision in the case of *Iowa L. & Tr. Co. v. Haller,* 119 Iowa 645, relied upon in the majority opinion, which was based upon instruments made prior to the enactment of the Negotiable Instruments Law. However this may be, by necessary application of the relation of principal and surety existing between a promisor and a promisee, as between Dunkin and Clark

Brothers, in the instant case, as recognized by the creditor, these defendants were released as to the plaintiff, *after the extension of time by plaintiff to Dunkin and wife.* This decision was brought down by reference and approval, so far as it was applicable in establishing secondary liability of defendants, to the case of *Boice v. Coffeen,* 158 Iowa 705, wherein Evans, Justice, speaking for this court, said:

"As between Steele, the mortgagor, and Coffeen, his grantee, who assumed the mortgage, Coffeen became the principal debtor; *and the liability of Steele to pay the debt became secondary.*"

And then this court cited with approval the *Malanaphy* case, supra, holding that this principle applied to the creditor, requiring him to act *in recognition thereof.*

And without specific reference to this line of authority, although it is necessarily comprehended therein and obedient thereto, it was held, in the case of *Union Cent. Life Ins. Co. v. Mitchell,* 206 Iowa 45, discussing the application of the Negotiable Instruments Act, this court, speaking through Albert, Justice, by necessary legal implication, referred to and made applicable the rule embodied in the foregoing case. It is said:

"We are quite familiar with the rule that extension of time on an indebtedness, without the consent of the surety, releases the surety; but that doctrine has no application to the situation before us in this case. It is fundamental that, to make a valid extension of time such as would release the surety, there must be a consideration therefor; and there is no showing whatever in this case that, if this matter were to be treated as an extension of time, there was any consideration therefor; and further, there was no fixed time of extension. To our minds, this was not, in reality, such an extension of time as the law contemplates, but simply gave additional security for unpaid interest."

With reference to the decision of *Corbett v. Waterman,* supra, it is well to have in mind the following statement found therein:

"\* \* \* until he [mortgagee] has done some act, or it in some manner sufficiently appears that he recognizes the purchaser or vendee as the principal and the original mortgagor as surety

merely, both of them will, as to such mortgagee, be treated as principals.''

It is clear, in the instant case, that the ''promise and agreement'' of Dunkin *was the very ''same act'' contemplated in the Corbett case, by which the relation of principal and surety may be established* as against the creditor, as in the *Malanaphy* case, supra, where it became the established rule of law of this state, subsequent to the Negotiable Instruments Act, *that, wherever the mortgagee, having knowledge of the relation of principal and surety existing, acts with regard to the parties thereto, he ''becomes bound to observe the relationship of principal and surety existing between the principal parties, and must act in recognition thereof.''* This is just and proper, and this is just exactly what occurred in the instant case; for, when the plaintiff received the *''promise and agreement''* of Dunkin and his wife to pay the obligations at the end of another five years, on February 1, 1928, with interest at 6 per cent, instead of 8 per cent, as provided in the notes, and did accept from the said parties new coupon interest notes, which it continued to collect upon, in payment of the advance interest, it did such with knowledge of this relation and of the secondary liability of defendants; and therefore it cannot be held that plaintiff did not materially change the original contract, nor deviate from the original position of parties, with respect to the plaintiff, then knowing the relation of the parties to be that of principal and surety. Now to revert to and hold the original mortgagors, not upon the contract as originally made, but *according to the agreement of Dunkin and wife with the plaintiff,* is nothing short of a destruction of the legal rights of defendants.

Legally and logically, until the contract between the plaintiff and Dunkin and wife was made, there could be no question in regard to the right of the plaintiff to hold either or both Dunkin and the original mortgagors, as principals, for the obligations. This is true because, while Dunkin *was principal before the new agreement, he was not principal under the new agreement until it was made*; and when this new ''promise and agreement'' was made, *he became principal to the plaintiff under it,* together with his wife, as a new party, *and under it alone could the plaintiff sue the assuming grantee* and his wife; and,

concomitantly, *the plaintiff could not sue these defendants thereon, first, because they were not parties to the transaction, and second, because there would be a misjoinder of the parties to such a suit.* I know of no compounding of remedies such as is necessarily and contrariwisely supposed in the majority opinion, and it is clear, therefore, under these conditions, that, as the *Malanaphy* decision holds, the mortgagee is *"conclusively * * * bound to observe the relationship of principal and surety * * *, and must act in recognition thereof."* Furthermore, the mortgagors, by reason of the change and alteration in the original contract as to the time of payment, the rate of interest, and the parties liable thereon, became released from all obligations thereunder; and this principle has been carried forward with approval, so far as applicable, in the case of *Boice v. Coffeen,* 158 Iowa 705, and, finally, into the decision of *Union Cent. Life Ins. Co. v. Mitchell,* supra. This, it seems to me, is the only legal and logical solution of the instant case, according to authority.

Even if the Negotiable Instruments Act does not apply restrictively to the instant case, *then all the more reason for the release of the defendants;* because these defendants have shown, and indeed the plaintiff admits (by demurrer), the facts in the separate answer showing that the defendants were known by the plaintiff to be sureties, and that their liability for the mortgage obligations was *secondary* at the time of the promise and agreement with the Dunkins, as was held in the *Malanaphy* and *Boice* cases. This being true, then all the more reason why the mortgagors should be released, because it is a general principle of mortgages, well settled (see Jones on Mortgages [7th Ed.], Sections 741, 742, citing a long line of authorities, including the case of *George v. Andrews,* 60 Md. 26), that any alteration of the mortgage contract releases the mortgagor.

The Maryland court, in *George v. Andrews,* supra, held, and properly so, that any material alteration of the mortgage contract will discharge the mortgagor, and that the court will not inquire whether the alteration be beneficial or injurious, if it be a material one. And to like effect, and for the same reason, the Supreme Court of the United States, in the case of *Union Mut. Life Ins. Co. v. Hanford,* 143 U. S. 187, says that *"it is for the surety alone to judge whether his position is altered for the worse."* In 8 Corpus Juris 445, citing many cases, it is said that:

"The general rule is that granting time to any of the parties to a note or bill is a discharge of every other party who, on paying it, would be entitled to sue the party to whom the extension is granted."

These authorities are comprehensive of the present case. The notes sued and declared upon are negotiable instruments in form. Therefore, the Negotiable Instruments Act applies, comprehensively of this defense between the original parties. The plaintiff knew of the secondary liability of these appellants, and it is obvious, under the decisions cited herein, that Section 9581, Code of 1924, applies in relation to the discharge from such instrument of one secondarily liable. This section reads:

"A person secondarily liable on the instrument is discharged: * * *

"6. By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

Why should we ignore this statute? *Primary and secondary liability relates to the remedy, and not to the character and limits of the obligation itself.* 8 Corpus Juris 43. 1 Joyce on Defenses to Commercial Paper (2d Ed.), Section 517, states:

"* * * it has been decided that a drawer of a bill may set up, in defense to an action against him, an *extension of time* so given [to an assumptor] * * * between the original parties." (Citing *Auld v. Walker,* 107 Neb. 676.)

There is no reason why we should in this case differentiate between or ignore the express statutory provisions governing negotiable instruments, or even nonnegotiable instruments to which defenses might be made under the terms of the Negotiable Instruments Act. The cases decided subsequent to 1902, cited by the majority opinion, are not applicable to or controlling of the law in the instant case. Let us examine the cited cases. In *Clarinda Nat. Bank v. Kirby,* 191 Iowa 786, the only question involved related to whether or not fraud was practiced in securing the assumption of a debt. The case of *Mowbray v. Simons,*

183 Iowa 1389, has no relation to the legal principal involved in the case at bar. It did involve the liability of an assuming grantee to pay the mortgage indebtedness. The mortgagor in that case was not a party to the action. In the instant case, the assuming grantee is not a party to this action; and by the ruling of the trial court, on plaintiff's motion, the relationship of principal and surety existing between mortgagor and the assuming grantee at the time of the "promise and agreement" of Dunkin is even denied a place in the pleadings.

The last case cited in the majority opinion is *Baldwin v. Munger*, 200 Iowa 32. This case was a proceeding in certiorari, to test the correctness of a ruling by the trial court in sustaining a motion for a change of venue.

Thus we come to the conclusion, derived from the facts in the instant case and the application of the law to those facts involving the relation of principal and surety existing as between the mortgagors and Dunkin, of which it should be said that, until Dunkin and wife made the agreement with the plaintiff, the latter could maintain a suit against both the mortgagors and the assuming grantee, as principals, but when, on February 1, 1923, with knowledge of the relation of principal and surety so existing, a new "promise and agreement" was accepted by plaintiff from Dunkin and his wife to pay to it the principal sum and interest thereon at the rate of 6 per cent, *instead of 8 per cent,* and upon the giving therefor of new coupon interest notes, the instant plaintiff did, under the *Fullerton Lbr. Co.* and *Malanaphy* decisions, *treat the said Dunkin and wife as principal obligors,* and therefore could not thereafter maintain suit as against the mortgagors, but it was confined in its remedy, under the arrangements made by it with Dunkin and wife, to that agreement, and no other, and could not revert back to and hold the original mortgagors. And especially is this true by an action at law declaring upon the original obligations, and seeking and obtaining judgment according to the contract of the said Dunkin and wife, and not according to the original contract with defendants. We have heretofore recognized the correct rule, and we should follow it.

The rule herein stated is in accord with the authoritative rule prevailing in the majority of the states of the Union. It is

the only uniform, true, and authoritative rule, and should be followed in and applied to this case. I would reverse.

KINDIG, J., joins in this dissent.