ANNA BARDEN, Plaintiff, Appellant, v. CHARLES P. HURD,
Defendant, Appellee.

No. 42287.

MARCH 13, 1934.

Putnam & Fillmore, for appellant.

C. B. Hextell, for appellee.

ANDERSON, J.—The accident of which plaintiff-appellant complains occurred on the 19th day of September, 1932, at about 6:30 in the evening on what is known as the East Thirtieth street viaduct in the city of Des Moines. It appears that one W. G. Bengston, who was driving in a northerly direction with a loaded trailer attached to his automobile came to a stop on the viaduct, and the Barden car, in which plaintiff was riding with her husband, was brought to a stop some 6 or 8 feet to the rear of the trailer. Mr. Bengston, who was driving the car to which the trailer was attached, got out of his car to rearrange some lumber with which the trailer was loaded. The two cars mentioned remained in the parked condition for probably six or eight minutes. The Barden car which was in the rear had a tail-light burning and two reflector lights. The car driven by the defendant-appellee, C. P. Hurd, which was traveling in the same direction as the two other cars, came upon the viaduct and ran into or against the Barden car, pushing the Barden car

forward into the trailer, and plaintiff claims damages as the result of personal injuries which she claims to have received on account of the impact. There were no lights upon the rear of the trailer. It was a drizzly, cloudy evening, and at the time of the accident had become quite dark. There was an incline approaching the viaduct from the south, but it appears there were from 200 to 240 feet of level roadway from the crest of the approach to the place where the two cars were parked and where the accident occurred. The plaintiff alleges as her grounds of negligence that the defendant drove his car at a high and excessive rate of speed, that he did not have his car equipped with sufficient brakes, and that it was not equipped with proper lights. But there is absolutely no evidence in the record to support any of these specifications of negligence. The plaintiff further alleged that the defendant did not keep a proper lookout, did not have his car under control, and did not drive his car at a speed which would permit him to bring it to a stop within the assured clear distance ahead. As to the last specifications mentioned there is no evidence in the record to support any of them other than the fact that the accident occurred.

The defendant filed an answer which was a general denial and also set up the fact that a full and complete settlement of any damages sustained by the plaintiff was made by the plaintiff and W. G. Bengston, and that full releases and satisfaction were executed by the plaintiff and her husband upon the payment to them of certain amounts by the said W. G. Bengston.

The plaintiff admitted the execution of the releases in question, but alleges and here contends that such releases were procured through fraud, inequitable conduct, and mutual mistake, and that they should not be held to bar or estop her from asserting the claim declared upon as against the defendant in this case.

At the close of plaintiff's testimony the defendant moved to withdraw from the consideration of the jury all of the various specifications of negligence, and also moved for a directed verdict. There does not seem to have been a ruling on the motion to withdraw the various specifications of negligence, but the trial court did sustain generally the motion to direct a verdict for the defendant, and plaintiff has appealed from such ruling.

We do not have the benefit of a brief and argument on the part of the appellee. The plaintiff made claim for damages resulting from the accident against W. G. Bengston, the driver of the

automobile with the trailer attached. The record shows that she called upon Mr. Bengston at his place of business and talked about settling the damages, and was referred by him to his attorney, a Mr. Lindgren. Negotiations were further carried on between the plaintiff and Mr. Bengston and his attorney which finally resulted in the payment to Mrs. Barden, the plaintiff, of the sum of $50, and to her husband of the further sum of $35, and a further sum of $15 to both plaintiff and her husband. Releases were signed at the time of these various payments; the plaintiff, Anna Barden, alone signing one of the releases which is in the following language:

"*Full Settlement Release.* I do hereby acknowledge receipt of the payment to me of the sum of Fifty and no/100 Dollars by W. G. Bengston and in consideration of said payment, I do hereby release and forever discharge the said payor, W. G. Bengston, his principals, agents, or employees, from all claims and causes of action which I now have or hereafter may have on account of any injuries sustained by me, or any member of my family, and whether said injuries are all now determined or anticipated or not, resulting from an accident which occurred on or about the 19th day of September, 1932, and on account of any damage to my property resulting from said accident. I have read the above and understand that this constitutes a full and complete release and settlement, and that no other consideration will be given to me or pay made to me by said payor or others on his behalf. Witness my hand and seal this 29th day of October, 1932, at Des Moines, Polk County, Iowa.

"Anna Barden,
"Address 1318 Hutton."

The plaintiff's husband also signed one of the releases, which is as follows:

"*Full Settlement Release.* I do hereby acknowledge receipt of the payment to me of the sum of Thirty-Five and no/100 Dollars by W. G. Bengston and in consideration of said payment, I do hereby release and forever discharge the said payor, W. G. Bengston, his principals, agents, or employees, from all claims and causes of action which I now have or hereinafter may have on account of any injuries sustained by me, or any member of my family, and whether said injuries are all now determined or anticipated or not, resulting

from an accident which occurred on or about the 19th day of September, 1932, and on account of any damage to my property resulting from said accident.

"I have read the above and understand that this constitutes a full and complete release and settlement, and that no other consideration will be given to me or payment made to me by said payor or others on his behalf.

"Witness my hand and seal this 29th day of October, 1932, at Des Moines, Polk County, Iowa.

"F. E. Barden,<br>
"Address 1318 Hutton."

Plaintiff and her husband also jointly executed a release, which is in the following language:

*"Release for loss of services and indemnity agreement.* The undersigned acknowledges the receipt of the payment of the sum of Fifteen and no/100 Dollars, by W. G. Bengston, and in consideration of said payment does hereby release and forever discharge the said payor from all claims and causes of action the undersigned now has or hereafter may have on account of injuries sustained by wife, Anna Barden, and Helen Barden, minor daughter, on or about September 19, 1932, and for said consideration the undersigned does hereby also covenant and agree to indemnify and hold harmless the said payor from all loss and expense on account of claims by any person resulting from said injuries.

"Witness my hand and seal this 29th day of October, 1932, at Des Moines, Iowa.

"Anna Barden, [Seal]<br>
"Address 1318 Hutton<br>
"F. E. Barden, [Seal]<br>
"Address 1318 Hutton."

The plaintiff contends that the foregoing releases were procured through fraud, inequitable conduct, and mutual mistake. She claims and so testified that Mr. Bengston came to her soon after the accident and negotiated for some little time before the settlement was finally consummated; that she accepted payment from Mr. Bengston in settlement only of damages so far as he was concerned, and that she accepted the money in full settlement as to him; that she felt both Mr. Bengston and the defendant, Hurd, were liable, and that

she was simply settling with Bengston as to his liability. She also claims and testified that, at the time the various amounts were paid by Mr. Bengston and the releases executed by herself and husband, Mr. Lindgren, the attorney representing Mr. Bengston, assured her that the signing of the releases would not affect her right to proceed further against the defendant Hurd; that she had no lawyer, and made the settlement with Mr. Bengston by reason of the assurance that it would not affect any claim she might desire to assert later against Mr. Hurd. But she does testify directly that some time in April, 1933, Mr. Bengston paid her $50 "As complete settlement for the accident which occurred on the viaduct in the City of Des Moines on September 18th, 1932." There is no evidence of fraud or inequitable conduct upon the part of any one in making the settlement and procuring the execution of the releases. Mr. Lindgren did not represent the defendant, Hurd, in the settlement, and 'the plaintiff knew that the attorney was representing only Mr. Bengston.

The plaintiff-appellant contends that there was no liability on. the part of Bengston, and that the releases indicate that the satisfaction of the entire claim for damages was not intended. We are not prepared to agree with either of these contentions. Whether Bengston was responsible for the accident or not makes little difference .here. The fact remains that plaintiff was making claims against him for damages resulting from the accident, and that such claims were settled by payment of the various sums mentioned and the execution of the releases we have referred to. It is well settled that plaintiff can have but one payment or settlement for her damages. In the case of Snyder v. Telephone Co., 135 Iowa 215, 112 N. W. 776, 14 L. R. A. (N. S.) 321, we had under consideration a case very similar to the one at bar. In that case plaintiff's husband had been electrocuted while on a light or telephone pole and had made settlement with the Des Moines Edison Light Company and executed satisfaction and releases. She later brought action against the telephone company, and the execution of the releases was interposed as a defense. Plaintiff in that case claimed that the payment by the light company was purely a gift or gratuity, voluntarily paid, and without any demand or claim by her upon the company. She also claimed that the light company was in no way or manner liable for the death of her husband, that it was not a joint tort-feasor in connection with the death of her intestate, and at the time of the settlement, and receipt of the money, the money was accepted as

simply a gift or gratuity and with the specific understanding and agreement between the parties to the transaction that the telephone company was not to be released in any way for the damages caused by its wrongful and negligent acts. In that case we said:

"We think it wholly immaterial whether plaintiff had made a claim against the light company on account of the death of her husband, or whether the manager of that company first approached her and suggested that he would pay her some money. The question is whether plaintiff received from the light company by voluntary settlement full compensation of any demand which she could have made or might have had against the light company for this same tort. To constitute a settlement with some one joint tort-feasor such as to release another who is sought to be held liable for the same tort, it must be shown that the settlement was of the entire claim against the one with whom the settlement is made. But, when it appears that there has been such settlement, supported by a valuable consideration, the entire right of action against any other person who might have been proceeded against for the same injury is extinguished; for the right of action for tort is indivisible, and one satisfaction extinguishes the entire demand."

We further said in that case:

"The plaintiff entered into a voluntary settlement for a substantial consideration with the light company, in which she expressly recited the receipt from said company of the sum paid by it in full of all claims against it for damages to the estate on account of the death of her intestate, thereby assuming that there was some claim of liability against said company, and agreeing that this claim was extinguished."

In Miller v. Beck, 108 Iowa 575, 79 N. W. 344, we said:

"As we have seen, it is entirely immaterial that the one from whom satisfaction was demanded and received was not liable for the entire damage. * * * A satisfaction, however, by whomsoever made, if accepted as such, is a bar to further proceedings on the same cause of action."

In the Snyder Telephone case, we held the release barred another action and used the further language:

"There is nothing in her testimony which tends to prove any

final agreement with the light company other than that indicated by the instrument, subsequently signed by her. A mere desire on her part that the defendant should not be released in that settlement, or the belief that such settlement would not have the legal effect of releasing the defendant, cannot change the result of the settlement actually made."

In Farmers Sav. Bank v. Aldrich, 153 Iowa 144, 133 N. W. 383, we reannounced and approved the doctrine in the Snyder Telephone case and used the following language:

"The weight of authority in this country seems to be unquestionably in support of the rule that an adjustment with one wrongdoer, and his release from all further liability, discharges all the joint wrongdoers, even though there is a reserved intention, either expressed or implied, to look to the other wrongdoers for further damages or compensation." (Citing a large number of cases from other jurisdictions.)

The same doctrine is announced in Phillips v. Werndorff, 215 Iowa 521, 243 N. W. 525, and in many other Iowa cases.

In the case of Crum v. McCollum, 211 Iowa 319, 233 N. W. 678, we had under consideration this identical question with release in practically the same form as in the case at bar. Justice Wagner reviewed many of the cases from this and other states and reannounced the rule we have heretofore referred to.

In the case at bar it cannot be said that the damages paid were wholly inadequate for the injury sustained. The testimony shows that the doctor bill was only $45, that the damage to the automobile, the claim for which was assigned to plaintiff by her husband, was $37.50. There was no evidence of permanent injury. The releases in question fully released and discharged W. G. Bengston "from all claims and causes of action which I now have or hereafter may have on account of any injuries sustained by me, or any member of my family, whether said injuries are all now determined or anticipated or not, resulting from an accident which occurred on or about the 19th day of September, 1932, and on account of any damage to my property resulting from said accident. I have read the above and understand that this constitutes a full and complete release and settlement, and that no other consideration will be given to me or pay made to me by said payor or others on his behalf."

The plaintiff cites many cases in support of her contention that these releases should not bar or estop the plaintiff from asserting further claims for her injuries as against the defendant-appellee. We have carefully considered all of such cases as well as the appellant's attempt to distinguish the cases we have cited and quoted from in this opinion. We are of the opinion that the rule we have announced is still the law of this state, and that it has not been modified by any of our later opinions.

In this case there is a serious question under the record as to whether the plaintiff made a case for the jury upon any of her specifications of negligence, but, as the case must be determined upon the validity of the releases, we deem it unnecessary to further prolong this opinion by discussion of the evidence on the question of negligence. We are constrained to hold that the trial court did not err in sustaining defendant's motion for a directed verdict. An affirmance follows.—Affirmed.

CLAUSSEN, C. J., and KINDIG, MITCHELL, DONEGAN, KINTZINGER, and STEVENS, JJ., concur.