FEDERAL LAND BANK, Plaintiff, Appellee, v. MARTIN CHRISTIAN-
SEN et al., Defendants, Appellants; FANNIE ALICE
AHART et al., Defendants, Appellees.

No. 45476.

JUNE 17, 1941.

J. C. Pryor, R. F. Swift, Edwin C. Davis, and F. R. Boyles, for plaintiff-appellee.

Dan J. Buckley and Bennett Cullison, for appellants.

BLISS, J.—On February 18, 1927, the appellants executed to the plaintiff, which we will refer to as the appellee, their promissory note for $8,000 payable in installments over a series of years. To secure the indebtedness, they executed a mortgage on their farm. About a year later, they sold and conveyed the land to Frank Turpin, and the defendant, Fannie Alice Ahart. By the deed, the grantees assumed the mortgage indebtedness, and thereafter Mrs. Ahart and her husband, the defendant, H. H. Ahart, made such payments as were made upon this indebtedness. On April 3, 1936, the Christiansens and the Aharts, as first parties, and the appellee, as second party, executed a written extension agreement. It recited the execution and existence of the note and mortgage, and stated that the indebtedness thereon was $8,500 as of April 1, 1936. It fixed the amount of the future annual installments and their maturities. It stated:

"(2) Second party is willing and hereby agrees to permit the time for payment of said mortgage indebtedness to be so extended and to accept payments accordingly, and first parties hereby jointly and severally expressly covenant and agree to pay the installments and the mortgage indebtedness, as set out in paragraph (1) hereof.

"(3) This agreement shall not affect any other terms of the original note and mortgage, nor any other rights thereunder, and first parties hereby jointly and severally agree to perform all of the covenants and obligations of such note and mortgage. * * *"

The petition herein for judgment and foreclosure was filed on May 24, 1938. On June 7, 1938, the Aharts moved for a continuance under a Moratorium Act, which motion was granted, but the continuance was terminated by the court on November

10, 1938 upon an application of the Aharts, that day filed. Prior to that date, through negotiations between appellee and the Aharts, a writing had been prepared by which the Aharts tendered to appellee their deed to the mortgaged property, and also their stock in the farm loan association, "for the consideration of my, our, release by said Bank [appellee] from all personal liability to it on said loan for the payment of the debt secured thereby and the further consideration of one dollar." The tender recited that the deed was "conditioned that said Bank's interest as mortgagee in said lands shall not merge with the title therein conveyed." The tender also recited that it was voluntarily made because of the desire to be relieved of all personal liability and responsibility for the payment of the loan, and with full knowledge of their further right to occupy the farm until dispossessed by law. Possession was tendered upon acceptance of the tender and deed.

The deed recited that in consideration of one dollar "and release from personal liability on debt [the grantors] do hereby grant, bargain, sell, convey and confirm unto" the appellee the mortgaged property, free of incumbrance, except appellee's mortgage. It contained the usual covenants of warranty, but also recited: "It is the express intention of the parties hereto that the right of said grantee under its mortgage covering the property above described shall not merge with the Equity of Redemption herein conveyed by grantor to the said grantee." Both tender and deed were dated and executed on November 10, 1938, and on that day were sent from Harlan, Iowa, to appellee by its attorney. The deed was accepted by appellee and returned to Harlan on December 23, 1938 and filed for record the following day. On the latter date, a decree was filed in this action. Default was taken against the appellants, as they in no way appeared. It was in the usual form of a judgment and decree of foreclosure. Foreclosure was decreed against all parties, with direction for issuance of execution and sale. As first filed, personal judgment was rendered against both the appellants and the Aharts. When the appellee was informed of this, it directed its attorney to have the judgment and decree corrected, in accordance with its agreement with the Aharts that they should be released from personal liability for

the debt. This correction was made about December 28, 1938, leaving personal judgment against the appellants only. After the execution sale, there remained a deficiency judgment of about $1,900. Appellee learned of some real estate equities which the appellants had and about March 1, 1939, after some negotiations, the appellee released the lien of its judgment from one of these properties on the payment of $240. On or about October 1, 1939, after further investigation and negotiations respecting another property, the appellee accepted a further sum of $400 and satisfied the deficiency judgment in full. A short time later, the appellants state that they learned of the tender and deed transaction and the release of any personal liability on the part of the Aharts. On December 15, 1939, the petition for new trial and the vacation of the judgment and decree was filed. Resistance to this was filed alleging lack of diligence, voluntary payment of the $640 when appellants had or should have had full knowledge of the facts, and the failure to allege or show facts constituting a good defense.

 I. We will pass upon the matter of a good defense first, because if there is no defense, the other issues are immaterial. Appellants state their proposition on this issue thus: ''The release of appellants' co-obligor is a satisfaction of the debt terminating the liability of the appellants so that the judgment against them is erroneous.'' In support of the proposition, they cite Malanaphy v. Fuller and Johnson Mfg. Co., 125 Iowa 719, 101 N. W. 640, 106 Am. St. Rep. 332; Taylor v. Galland, 3 (G. Greene) Iowa 17; Bonney v. Bonney, 29 Iowa 448; Seymour & Co. v. Butler, 8 Iowa 304; Porter v. Railway Co., 99 Iowa 351, 68 N. W. 724; Iowa Title & Loan Co. v. Clark Bros., 209 Iowa 169, 224 N. W. 774; Warman v. Hat Creek Ranch Co., 202 Iowa 198, 207 N. W. 532; Restatement of Contracts, section 123; Gladson v. Heagle, 170 Minn. 166, 212 N. W. 175.

To this proposition the appellee answers that the liability of a mortgagor for the payment of his mortgage indebtedness to the mortgagee, or to the holder thereof, is not qualified in any way by the transfer of the property to a vendee who assumes and agrees to pay the indebtedness. Although as between the mortgagor-vendor and the assuming vendee, the latter becomes primarily liable for the payment of the mortgage

indebtedness, and the former becomes secondarily liable, or a surety for the grantee, the mortgagor remains a primary debtor to the mortgagee or mortgage holder. By his assumption agreement, the grantee also becomes primarily liable to the holder of the mortgage papers, as well as primarily liable to the mortgagor for its payment. The holder of the mortgage papers may proceed against either or both of these primary obligors for the enforcement of his claim. With respect to the extension of time to the assuming grantee, we have held consistently from the case of Corbett v. Waterman, 11 Iowa 86, down to our latest decision on the question, that such a binding agreement for the extension of the maturity of the paper, whether made with or without the knowledge or consent of the mortgagor, does not release the mortgagor from his personal liability, notwithstanding his relation of surety as between him and the assuming grantee. Some of our decisions in support of this holding are: James v. Day and Close, 37 Iowa 164; Massie v. Mann, 17 Iowa 131; Robertson v. Stuhlmiller, 93 Iowa 326, 61 N. W. 986; Iowa Loan & Trust Co. v. Haller, 119 Iowa 645, 93 N. W. 636; Blank v. Michael, 208 Iowa 402, 226 N. W. 12; Herbold v. Sheley, 209 Iowa 384, 224 N. W. 781; Iowa Title & Loan Co. v. Clark Bros., 209 Iowa 169, 224 N. W. 774; Royal Union Life Ins. Co. v. Wagner, 209 Iowa 94, 227 N. W. 599. Our holding in this matter is perhaps contrary to numerical authority, but there is much to be said in its support. The general rule as stated in 2 Williston on Contracts (Revised Ed.), section 386, page 1119, is: "As between the grantor and grantee, the latter becomes principal debtor and the former a surety. Accordingly, if the mortgagee gives time to the grantee, he is generally held to forfeit all right to assert a claim against the grantor." This court applies the same rule to the assumption of the debts of the old partnership by an incoming partner or by the new partnership which it applies to assumption of the mortgage by a grantee. Cohen v. Mizz Company, 197 Iowa 450, 195 N. W. 735. See also McAreavy v. Magirl, 123 Iowa 605, 99 N. W. 193, for a discussion by Justice Weaver. Where the relation is that of surety from the beginning and that person has never been primarily liable, the rule, both in this state and elsewhere, is that where the creditor suspends his right of action against the principal

debtor and gives further time for the payment of the debt, without the consent of the surety, particularly where it results to the prejudice of the latter, such an agreement is a good defense for the surety. Kelly v. Gillespie, 12 Iowa 55, 57, 79 Am. Dec. 516; Corielle v. Allen, 13 Iowa 289, 290, 291; Lauman, Hedges & Co. v. Nichols, 15 Iowa 161, 165. Likewise if the creditor releases property, liens, or security of any kind, which he may have in his possession or under his control and which might have been subjected to the debt of the principal, the one secondarily liable will be released to the extent of the injury. Bedwell v. Gephart, 67 Iowa 44, 24 N. W. 585; Maquoketa v. Willey, 35 Iowa 323, 329; Sherraden v. Parker, 24 Iowa 28; Read v. American Sur. Co., 117 Iowa 10, 90 N. W. 590; Benton County Sav. Bank v. Boddicker, 105 Iowa 548, 75 N. W. 632, 45 L. R. A. 321, 67 Am. St. Rep. 310; Christner v. Brown, 16 Iowa 130.

The appellants have not brought themselves within either of these last stated rules, first, because they are liable to the appellee as principal debtors, and, second, because the appellee has done nothing to damage them. Appellants cite, but do not discuss, Malanaphy v. Fuller and Johnson Mfg. Co., supra (125 Iowa 719, 101 N. W. 640, 106 Am. St. Rep. 332). Malanaphy and Daly, a partnership, had given defendant its promissory note for $179. A little later it sold its business to Christen & Gilbertson, another partnership. As part of the consideration, the new firm assumed the indebtedness of the old firm, including the note. The old firm tried to get the defendant to substitute the note of the new firm for its note, but defendant refused. Later a new note identical in every way with the old note was signed by both firms and sent to the defendant. The latter said nothing but kept both notes. It procured a judgment on the new note against both firms and their members, and some time later it accepted $41.60 from Christen and released him from any and all liability under the judgment and discharged it of record as to him, but reserved it in full force and effect against Malanaphy and Daly. The latter brought suit to enjoin the enforcement of the judgment against them. The relief was granted and decree affirmed on appeal. Whether Christen had property on which the judgment was a lien, or which could have been subjected

to the judgment, does not appear. But the claim had been liquidated into a judgment readily available to enforcement against any property Christen had or might acquire. It was a potential asset of some value which the creditor had acquired, and to which Malanaphy and Daly were entitled to subrogation upon payment of the debt. They were deprived of this right of subrogation.

In the case before us, the appellants are not in the position of Malanaphy and Daly. The obligation of the appellants and the Aharts under the extension agreement was joint, and joint and several. Appellee could sue one, or more, or all of them. It had to make the Aharts parties in order to cut off their equity of redemption. When the suit was begun, it asked full relief against all of them. Aharts had but a qualified ownership in the property, and appellee had a right under its mortgage to subject the property to the payment of the debt. When it took the deed from Aharts, it reserved its foreclosure rights to perfect the title, and also to subject the land to public auction at Sheriff's sale where the appellants could protect their rights at a fair sale. The possession of the land and the crops were protected in the decree by receivership. In this manner the appellants had the full value of the property applied to the debt. The fact that there was a deficiency judgment against appellants cannot be charged against appellee as wrongful conduct against the appellants. They were deprived of no rights of subrogation as against the property. With respect to a personal judgment against the Aharts, that was a matter which was optional with the appellee. It was not required to take such a judgment against them, and it did not. By releasing them from personal liability to it, it deprived the appellants of no right that was prejudicial, since from the day of the Aharts' default in the performance of their assumption agreement, the appellants had, and still have, the right to sue the Aharts for the breach.

■ II. What we have said in the preceding division disposes of the case, but appellants also contend that regardless of whether they may have had any rights as sureties which appellee did not respect, they were released by the release of their co-obligors. Appellants cite Seymour & Co. v. Butler, 8 Iowa 304, 307, which states: "It is well settled that if two or more are

jointly, or jointly and severally bound, and the obligee releases to one of them, all are discharged. And a release to one partner is a release to all. 1 Parsons' Contracts, 23, 162.'' The opinion immediately qualifies this statement, by saying: ''But (says Mr. Parsons), though the word release be used, even under seal, yet if the parties, the instrument being considered as a whole, and in connection with all the circumstances. of the case, and the relations of the parties, cannot reasonably be supposed to have intended a release, it will be construed only as an agreement not to charge the person or party to whom the release is given, and will not be permitted to have the effect of a technical release.'' It is true, that in that case there was a specific reservation as to the other co-obligor, but the existence or absence of such a reservation is not determinative under our holdings as will be hereinafter noted.

The same rule is stated in Bonney v. Bonney, 29 Iowa 448. A release as to others was sustained but that was a surety case. The same is true of Warman v. Hat Creek Ranch Co., supra (202 Iowa 198, 207 N. W. 532). The rule as stated in the Seymour and Bonney cases, supra, was again announced in Bell v. Perry & Townsend, 43 Iowa 368. That was a joint tort-feasor case, but after stating the rule as given in Bonney v. Bonney, supra, the court said (at page 372 of 43 Iowa) : ''It is true this case was in relation to a joint liability arising on contract, but this can make no difference, for the foundation of the rule rests in both cases on the joint liability, and the effect of the release in both is the same.'' In Farmers Savings Bank v. Aldrich, 153 Iowa 144, 153, 133 N. W. 383, a joint wrongdoer case, we held that a creditor could not by expressly or impliedly reserving the right to recover an additional amount from others, defeat the effect of a release which he had given. See Barden v. Hurd, 217 Iowa 798, 804, 253 N. W. 127.

Considering all of the circumstances of the case,. it appears to us that the release of the Aharts from personal liability was not intended as a satisfaction of the entire debt, but was nothing more than a covenant not to sue or to press the claim against them. The Aharts, in fact, paid nothing, and the appellee received nothing for the release. The Aharts gave nothing from any independent source. The appellee simply took by foreclosure

of its mortgage the property it was entitled to thereunder. It could have taken it whether the Aharts were willing or unwilling. The tendency of the courts is away from the discharge of those jointly liable, whether by contract or by tort, by what may be called technical releases. Such tendency is wise and sound. Any other policy is unfair both to the injured party, or the creditor, and to those jointly bound. Suppose that four persons are jointly liable by contract or by tort for $10,000. One of them is insolvent and execution proof, but his friends or his relatives are willing to donate $2,500, or he is willing to sacrifice his homestead to raise that amount providing that he can have a full satisfaction of his liability. He should be permitted to do it and the injured party or creditor should be at liberty to accept it, without the danger of being penalized by discharging the others jointly liable. Any such amount so received is a pro tanto benefit not only to the one entitled to it, but also to the others jointly liable—nobody is hurt and all are benefited.

It is our view the appellants were in nowise prejudiced by what the appellee did, and are not entitled to the relief asked.

III. The trial court found that the payment of the $640 was voluntarily made by the appellants at times when they had knowledge or should have had knowledge of the facts upon which they based their petition. The record does not justify our disturbing this finding. The judgment and decree is affirmed.—Affirmed.

HALE, C. J., and SAGER, STIGER, MITCHELL, WENNERSTRUM, and GARFIELD, JJ., concur.

MILLER, J., dissents as to division II.