**PIRELLI–ARMSTRONG TIRE CORPORATION, Appellee,**

v.

**MIDWEST–WERNER & PFLEIDERER, INC., Appellant.**

No. 93–1921.

Supreme Court of Iowa.

Sept. 20, 1995.

Rehearing Denied Nov. 17, 1995.

Chester C. Woodburn III of Hansen, McClintock & Riley, Des Moines, for appellant.

Randall H. Stefani and Michael J. Eason of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN and TERNUS, JJ.

CARTER, Justice.

In the district court, the plaintiff, Pirelli–Armstrong Tire Corporation (Pirelli), recovered indemnity from defendant, Midwest–Werner & Pfleiderer, Inc. (Midwest), for seventy percent of the workers' compensation benefits paid to the surviving beneficiaries of a Pirelli employee who was injured and later died from acts of Midwest in performing a contract on Pirelli's premises. The district court's award was based on its interpretation of a contract between the parties. Although that court found Pirelli was entitled to indemnification, it reduced the amount claimed by the percentage of causal fault attributed to Pirelli (as contrasted with Midwest) in regard to the events that caused the employee's injury.[1]

The issues on Midwest's appeal are: (1) whether an indemnity clause in the agree-

---

1. This apportionment of causal fault was established by jury verdict. Pirelli's fault was attributable to violation of OSHA standards governing its own responsibility in re-energizing an electric motor.

ment under which it undertook to work on Pirelli's premises required it to indemnify Pirelli for workers' compensation liability to employees injured by Midwest's work; and (2) whether, if Pirelli was entitled to such indemnity, it forfeited that right by not pursuing and ultimately releasing its lien and indemnification rights against the injured employee's tort recovery from Midwest. Pirelli has cross-appealed, asserting that it is entitled to one hundred percent indemnity rather than seventy percent. Because we agree with Midwest as to its second contention, we reverse on its appeal and dismiss Pirelli's appeal on the basis that the decision on the primary appeal renders those issues moot.

The parties entered into an agreement whereby Midwest would repair machinery on Pirelli's business premises. In performing this work, it became necessary for Midwest to de-energize an electric motor and turn it manually. To assist in this process, Midwest attached a large chain wrench to the motor's shaft. Midwest's employees failed to remove this wrench prior to re-energizing the machine. When the motor started, the wrench whirled about like an airplane propeller. When Terry Avitt, an employee of Pirelli, walked into the area, he was struck by the flailing wrench. He was seriously injured and had a portion of his arm amputated. He eventually died from a blood clot.

Immediately after Avitt's injury, Pirelli began paying him workers' compensation benefits. Four months after the injury Avitt also filed a tort action against Midwest to recover for his personal injuries. Eleven months after the injury it was necessary to surgically amputate Avitt's left hand. Six months after that surgery he died from bilateral pulmonary emboli caused by a deep venous thrombosis related to the initial injury. His personal representative then continued the tort action as a wrongful-death claim.

The tort case against Midwest and Pirelli's remaining workers' compensation liability to Avitt's surviving beneficiaries were resolved about seven months after Avitt's death. The workers' compensation claim was the subject of a special case settlement between Pirelli and Avitt's surviving beneficiaries. Part of the recited consideration was Pirelli's withdrawal of its statutory lien and indemnity rights against any damages recovered by the Avitt estate in the tort case. The total amount of workers' compensation benefits paid to Avitt and his surviving beneficiaries was $330,406. Six days after the workers' compensation claim was compromised, Midwest agreed to a consent judgment against it in the tort action for the sum of $798,000.

The work undertaken on Pirelli's premises by Midwest was in response to three separate purchase orders. These documents described Pirelli as "Buyer," and Midwest as "Seller." Each of these documents contained the following language:

> Seller agrees to defend, indemnify and hold harmless Buyer and its employees from and against any and all liability, claims, losses or damage due to injury or death to any persons (including employees of Buyer) or damage to or the destruction of any property (including property of Buyer) arising or resulting from the performance of this contract.

Midwest argues that this clause does not require it to indemnify Pirelli for any of the workers' compensation benefits paid to Avitt and his beneficiaries because it does not mention indemnity for losses that were caused by Pirelli's own causal negligence. This argument relies on cases such as *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 916 (Iowa 1975), for the proposition that a contract for indemnity will not include losses caused by the indemnitee's own negligence unless that circumstance is expressly identified in the contract as a loss for which indemnity is provided.

Pirelli contends that the rule of strict interpretation applied in the *Evans* case has been modified by this court's decision in *Herter v. Ringland–Johnson–Crowley Co.*, 492 N.W.2d 672 (Iowa 1992), which approved a clause triggering indemnity on "an injury connected with the execution of the contract." *Id.* at 674.

We need not decide whether Pirelli's interpretation of the *Herter* case is correct or, if it is not, how the *Evans* rule is affected by a determination that negligence of both

the indemnitor and the indemnitee under the agreement contributed to the loss. Irrespective of how those issues might be decided, we find that, as Midwest suggests, Pirelli forfeited any right to seek indemnity under the contract by relinquishing its indemnification and lien rights under the workers' compensation laws.

The statutory scheme under which Pirelli paid workers' compensation benefits to Avitt and his beneficiaries has its own protection for an employer who has incurred workers' compensation liability as a result of a third-party's fault. *See* Iowa Code § 85.22(1) (1993). Some courts have found that the employer's statutory subrogation is its exclusive remedy as against third parties. *Liberty Mut. Ins. Co. v. United States,* 290 F.2d 257 (2d Cir.1961) (arising under the Longshoremen's Act); *United States Casualty Co. v. F.A. Johnson, Inc.,* 117 So.2d 438 (Fla.App.1960); *United States Casualty Co. v. Hercules Powder Co.,* 4 N.J. 157, 72 A.2d 190 (1950). *See generally* 2B Arthur Larson, *Larson's Workmen's Compensation Law* § 77.12, at 14–995—14–998 (1995) (discussing cases that hold subrogation remedy is exclusive). We do not go that far. Subject to the parties' dispute over the application of the *Evans* rule, contractual indemnity is not disfavored and ordinarily an agreement will be enforced between the parties according to its terms. We do not believe, however, that a purported indemnitor who has paid the injured worker a full tort satisfaction may also be forced to pay a workers' compensation satisfaction, in whole or in part, where the tort satisfaction exceeds the workers' compensation liability. Pirelli's position, if adopted, would lead to two unwarranted consequences; first, the Avitts would receive a double recovery for some of their damages, second, Midwest would be forced to pay twice for the same loss. All of this could have been avoided if Pirelli had simply continued in force its lien and indemnity rights under the act. It would have been made whole by that course of action, and the liabilities of the parties would have been distributed where they properly belong according to law.

There are several legal rationales, which support the decision we reach. These include the propositions that: (1) a party secondarily liable who pays an obligation is subrogated to the rights of the party who is primarily liable, *see Ohio Casualty Ins. Co. v. Galvin,* 222 Iowa 670, 672, 269 N.W. 254, 256 (1936); *American Surety Co. v. State Trust & Sav. Bank,* 218 Iowa 1, 4, 254 N.W. 338, 340 (1934). In the present case, Pirelli has released any subrogation rights that Midwest might have had against the Avitts; (2) if a party whose obligation is guaranteed by another releases security for that obligation, the guarantor is discharged, *see Federal Land Bank v. Christiansen,* 230 Iowa 537, 542, 298 N.W. 641, 644 (1941); *Bankers' Surety Co. v. Linder,* 156 Iowa 486, 496, 137 N.W. 496, 499 (1912); and (3) a party to a contract must act to mitigate damages. The third doctrine applies to all types of contracts. The first and second doctrines, although developed in the law of suretyship, also apply to indemnity situations. *See* 41 Am.Jur.2d *Indemnity* § 37, at 727 (1968). Either separately, or in combination, these doctrines support the conclusion that Pirelli is not entitled to any indemnity in the present action.

The judgment of the district court is reversed on Midwest's appeal. Because our decision renders the issues in Pirelli's appeal moot, it is dismissed.

**REVERSED ON APPEAL; CROSS–APPEAL DISMISSED AS MOOT.**